

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Vx CAPITAL PARTNERS, LLC; V1C-23244 LLC; HBC-GSKY LLC; and HWC-GSKY LLC, | ) ) ) ) |
| Plaintiffs, | ) ) |
| -against- | ) **COMPLAINT** ) |
| MK AIRLINES LIMITED, | ) ) |
| Defendant. | ) ) ) |

Plaintiffs Vx Capital Partners, LLC ("Vx Capital"), V1C-23244 LLC ("V1C"), HBC-GSKY LLC ("HBC"), and HWC-GSKY LLC ("HWC") (collectively, the "Plaintiffs"), by their attorneys, White & Case LLP, for their Complaint against Defendant MK Airlines Limited ("MK Airlines" or "Defendant"), allege as follows:

## PARTIES

1.      Plaintiff Vx Capital is a limited liability company organized under the laws of the State of California with its principal place of business in California.

2.      Plaintiff V1C is a limited liability company organized under the laws of the State of Delaware with its principal place of business in California.

3.      Plaintiff HBC is a limited liability company organized under the laws of the State of California with its principal place of business in California.

4.      Plaintiff HWC is a limited liability company organized under the laws of the State of California with its principal place of business in California.

5.      Defendant MK Airlines is a corporation organized under the laws of the United Kingdom with its principal place of business in East Sussex, United Kingdom.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the parties are diverse and the amount in controversy exceeds $75,000.00.

7.      This Court has jurisdiction over Defendant by virtue of its prior written consent to personal jurisdiction in this judicial district under the subject leases upon which this action is based.

8.      Venue is proper in this district because the subject leases upon which this action is based contain a choice-of-venue provision identifying the borough of Manhattan, New York, New York as the venue for any litigation arising under such leases.

## FACTS

9.      On or about August 21, 2007, Plaintiffs entered into two engine lease agreements for two Pratt & Whitney model JT9D-7R4G2 engines each having a value of approximately $2,000,000.00, serial # 715193 ("Engine – 715193") and # 715220 ("Engine – 715220") (collectively, the "Engines").

10.     True and correct copies of the lease agreements are attached hereto as Exhibits 1 (the "Engine Lease Agreement – 715193") and 2 (the "Engine Lease Agreement – 715220") (collectively, the "Lease Agreements").  The Lease Agreements have substantially the same terms and conditions.

11.     Engine Lease Agreement – 715193 required Defendant to pay each month $20,000.00 of rent and utilization fees of at least $56,250.00, for a total minimum monthly payment of $76,250.00 (the "Engine Lease Fees – 715193").

12.     Engine Lease Agreement – 715220 required Defendant to pay each month $20,000.00 of rent and utilization fees of at least $56,250.00, for a total minimum monthly payment of $76,250.00 (the "Engine Lease Fees – 715220").

13.     The Lease Agreements required that the Engines be operated in accordance with the manufacturer's and the applicable aviation authority's approved operation and maintenance manuals.

14.     Each lease agreement was for an eighteen month term.  The Lease Agreements commenced on August 21, 2007 and terminate on February 21, 2009.

15.     On or about December 28, 2007, Plaintiffs were advised by the Defendant that the Defendant had operated the Engines on an aircraft that was not certified for the Engines' use. Operating the Engines on an aircraft that was not certified for the Engines' use is a breach of the Lease Agreements.

16.     Pursuant to the Defendant's request, Plaintiffs began investigating whether it could on behalf of the Defendant lease the Engines to other customers.  Plaintiffs eventually located Northwest Airlines ("Northwest") as willing to lease Engine – 715193.

17.     Defendant shipped Engine – 715193 to Northwest's maintenance base in Minnesota for examination and inspection prior to Northwest's acceptance of Engine – 715193.

18.     Plaintiffs requested documentation from the Defendant confirming that the Engines had been preserved and maintained in accordance with the manufacturer's maintenance manuals, as required by the Lease Agreements.

19.     Defendant failed to provide the requested documentation, but repeatedly assured Plaintiffs that both Engines, including Engine – 715193, had been preserved in accordance with the manufacturer's maintenance manuals as required by the Lease Agreements. Defendant also assured Plaintiffs it would provide documentation to certify the condition of the Engines.

20.     Defendant failed to cover and properly protect Engine – 715193 during transportation to Minnesota. Northwest advised the Plaintiffs that it suspected Engine – 715193 had not been properly transported, protected and preserved.

21.     On or about April 7, 2008, Defendant provided Plaintiffs with a revised EASA Form One certifying that it had conducted the required preservation and maintenance of Engine – 715193. Defendant promised additional paperwork documenting the preservation of both Engines.

22.     Subsequently, Defendant admitted that it had not preserved Engine – 715193 and that it had falsified the revised EASA Form One in which it had certified to the Plaintiffs that Engine – 715193 had been properly preserved.

23.     Defendant failed to deliver the promised additional documentation that allegedly would prove that the Defendant had properly preserved and maintained the Engines.

24.     Defendant has failed to pay any lease fees on either engine since January 10, 2008 and is currently in default under both Lease Agreements.

25.     As of May 10, 2008, Defendant owed $681,120.00 under the Lease Agreements. Lease fees on both Engines continue to accrue each month under the Lease Agreements.

26.     Defendant failed to return the Engines and failed to pay fees due under the Lease Agreements.

27.     All conditions precedent prior to Plaintiffs' recovery have occurred or have been performed.

## COUNT I

### Breach of Contract (Engine Lease Agreement – 715193)

28.     Plaintiffs incorporate and reallege paragraphs 1 through 27 as though fully set forth herein.

29.     Under the terms of Engine Lease Agreement – 715193, Defendant agreed to pay the Engine Lease Fees – 715193.

30.     Under the terms of Engine Lease Agreement – 715193, Defendant agreed to operate and maintain Engine – 715193 in accordance with the manufacturer's and the applicable aviation authority's approved operation and maintenance manuals.

31.     Defendant breached Engine Lease Agreement – 715193 by failing to pay the Engine Lease Fees – 715193 and continues to be in default of Engine Lease Agreement – 715193 by failing to pay the Engine Lease Fees – 715193 as they become due.

32.     Defendant breached Engine Lease Agreement – 715193 by failing to operate and maintain Engine – 715193 in accordance with the manufacturer's and the applicable aviation authority's approved operation and maintenance manuals.

33.     Plaintiffs have suffered damages, and continue to suffer damages, as a direct and proximate result of Defendant's breaches of Engine Lease Agreement – 715193.

## COUNT II

### Breach of Contract (Engine Lease Agreement – 715220)

34.     Plaintiffs incorporate and reallege paragraphs 1 through 33 as though fully set forth herein.

35.     Under the terms of Engine Lease Agreement – 715220, Defendant agreed to pay the Engine Lease Fees – 715220.

36.     Under the terms of Engine Lease Agreement – 715220, Defendant agreed to operate and handle Engine – 715220 in accordance with the manufacturer's and the applicable aviation authority's approved operation and maintenance manuals.

37.     Defendant breached Engine Lease Agreement – 715220 by failing to pay the Engine Lease Fees – 715220 and continues to breach Engine Lease Agreement – 715220 by failing to pay the Engine Lease Fees – 715220.

38.     Defendant breached Engine Lease Agreement – 715220 by failing to operate and maintain Engine – 715220 in accordance with the manufacturer's and the applicable aviation authority's approved operation and maintenance manuals.

39.     Plaintiffs have suffered damages, and continue to suffer damages, as a direct and proximate result of Defendant's breaches of Engine Lease Agreement – 715220.

## COUNT III

### Fraud

40.     Plaintiffs incorporate and reallege paragraphs 1 through 39 as though fully set forth herein.

41.     Plaintiffs repeatedly requested documentation from the Defendant confirming that the Engines were preserved in accordance with the manufacturer's maintenance manuals as required by the Lease Agreements.

42.     Defendant fraudulently, knowingly, maliciously and intentionally misrepresented to the Plaintiffs that the Engines had been preserved in accordance with the manufacturer's maintenance manuals as required by the Lease Agreements.

43.    Defendant knowingly falsified and delivered to Plaintiffs a false and improper revised EASA Form One falsely certifying that it had properly preserved and maintained Engine – 715193.

44.    Defendant knew that Engine – 715193 had not been preserved and knew when it delivered to Plaintiffs the revised EASA Form One that the certification was false.

45.    Defendant's false representations to Plaintiffs and the delivery of the falsified revised EASA Form One constituted violations of the applicable civil aviation regulations.

46.    Defendant intended that Plaintiffs rely on and Plaintiffs did rely on Defendant's fraudulent and false misrepresentations to their detriment, and as a result thereof, Plaintiffs have suffered damages.

### COUNT IV

**Breach of Implied Covenant of Good Faith and Fair Dealing**

47.    Plaintiffs incorporate and reallege paragraphs 1 through 46 as though fully set forth herein.

48.    Plaintiffs entered into the Lease Agreements with Defendant.  Implied in the Lease Agreements was a term of good faith and fair dealing which imposed upon Defendant a duty to act in good faith under the Lease Agreements.

49.    Defendant breached the implied covenant of good faith and fair dealing by, among other things, falsely and repeatedly informing Plaintiffs that it had preserved the Engines, falsely and improperly issuing a revised EASA Form One indicating that Engine – 715193 had been properly preserved, and was otherwise performing, and would continue to perform, its obligations under the Lease Agreements.

50.     Defendant's conscious and deliberate acts unfairly frustrated the purpose of and Plaintiffs' reasonable expectations under the Lease Agreements.

51.     Through such actions, Defendant has deprived Plaintiffs of the benefits of the Lease Agreements.

52.     Plaintiffs have suffered, and will continue to suffer, damages as a result of Defendant's breaches of the Lease Agreements.

## COUNT V

### Replevin

53.     Plaintiffs incorporate and reallege paragraphs 1 through 52 as though fully set forth herein.

54.     This is an action to recover possession of the Engines in Minneapolis, Minnesota and East Sussex, United Kingdom.

55.     Plaintiffs are the owners of both Engine – 715193 and Engine – 715220, and are entitled to their possession.

56.     To the best of Plaintiffs' knowledge, information, and belief, the value of Engine – 715193 is $2,000,000.00 and the value of Engine – 715220 is $2,000,000.00.

57.     To the best of Plaintiffs' knowledge, information, and belief, Defendant is in possession of the Engines.  To the best of Plaintiffs' knowledge, information and belief, Engine – 715193 is located at 7500 Airlines Drive, Minneapolis, Minnesota, and Engine – 715220 is located at Landhurst, Hartfield, East Sussex, TN7 4DH, United Kingdom.

58.     Defendant is wrongfully detaining the Engines.  Defendant's breaches of the Lease Agreements terminated its right to possess the Engines.

59.    Defendant is obligated to return the Engines to the Plaintiffs in serviceable condition as required by the Lease Agreements.

60.    The Engines have not been taken for any tax, assessment, or fine pursuant to law.

61.    The Engines have not been taken under an execution or attachment against the property of the Defendant.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Vx Capital, V1C, HBC, and HWC pray for a judgment in their favor and against Defendant MK Airlines as follows:

a.    That Plaintiffs be awarded monetary damages, pre-judgment interest, taxes, costs and expenses for any and all lease fees owed under the Lease Agreements, any and all lease fees which may come due under the Lease Agreements, any and all damages incurred by Plaintiffs in restoring the Engines to serviceability, and any and all damages incurred by Plaintiffs in ensuring Defendant's compliance with the Lease Agreements;

b.    That Defendant be ordered to return the Engines to serviceable condition and be ordered to return the serviceable Engines to the Plaintiffs in accordance with the Lease Agreements; and

c.    That Plaintiffs be awarded such other relief as the Court deems just and proper.

Dated:  May 22, 2008

Respectfully submitted,

**WHITE & CASE LLP**
1155 Avenue of the Americas
New York, New York 10036
Phone:  (212) 819-8200

c.  That Plaintiffs be awarded such other relief as the Court deems just and proper.

Dated:  May 22, 2008

Respectfully submitted,

**WHITE & CASE LLP**
1155 Avenue of the Americas
New York, New York 10036
Phone:  (212) 819-8200
Facsimile:  (212) 354-8113

By: _____
   Adam Gahtan (AG-8802)
   Gregory M. Starner (GM-1719)

*Of Counsel:*

Stephen M. Corse
White & Case LLP
4900 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, FL  33131-2352
Telephone:  (305) 371-2700
Facsimile:   (305) 358-5744

# EXHIBIT 1

# Amended and Restated
# Engine Lease Agreement


## JT9D-7R4G2
## esn 715193


between

**MK Airlines Limited**

Hereinafter referred to as "Lessee"

And

**V1C-23244 LLC**
**HBC-GSKY LLC**
**and**
**HWC-GSKY LLC**


Hereinafter referred to as "Lessors"

This AMENDED AND RESTATED ENGINE LEASE AGREEMENT is effective the 21ST day of August, 2007 ("Lease") between:

**V1C-23244 LLC** a limited liability company organized under the laws of the State of Delaware, USA ("V1C ");

**HBC-GSKY LLC** a limited liability company organized under the laws of the State of California, USA , ( "HBC" ); and

**HWC-GSKY LLC** a limited liability company organized under the laws of the State of California, USA ("HWC") (HWC, HBC and V1C are hereinafter collectively referred to as the "Lessors");

 and

**MK Airlines Limited**, a company incorporated in the United Kingdom, as lessee ("Lessee")

**Whereas** Corsair S.A., a company incorporated in France ("Corsair"), and the Lessee have entered into an Engine Lease Agreement, dated June 27, 2007 (the "Corsair Lease") n pursuant to which Corsair leased to the Lessee the Engine as defined herein;

**Whereas** Corsair has sold the Engine to the Lessors and novated the Corsair Lease to the Lessors (the Corsair Lease, as novated, the "Novated Lease"), and the parties hereto wish to amend and restate the Corsair Lease;

For the consideration hereinafter set out, THE PARTIES HEREBY AMEND AND RESTATE THE NOVATED LEASE IN ITS ENTIRETY AS FOLLOWS:

## 1. SCOPE OF AGREEMENT:

A. The Lessors agree to lease the following engine ("the Engine") to the Lessee and the Lessee agrees to lease the Engine from the Lessors upon the terms set out in this Agreement for a period 18 months from the effective date of this document, unless earlier terminated in writing by the parties. This Lease may be extended beyond 18 months with written agreement from both parties, such extension to be on the same terms and conditions as those detailed herein.

    (1) Engine: (as specified in Schedule 1)

| | |
|---|---|
| (2) Manufacturer: | Pratt & Whitney |
| (3) Model: | JT9D-7R4G2 |
| (4) Serial Number: | 715193 |
| (5) Lease Commencement Date: | the date hereof |
| (6) Lease Termination Date and Redelivery Date: | the date that is 18 month anniversary of the Economic Lease Commencement Date |

(as defined on Schedule 4) or such later date as may be agreed by the parties pursuant to the first paragraph of this Section 1A.

## 2. **TERM:**

The Lease term means the time from the Lease Commencement Date to the Lease Termination Date, unless earlier terminated or extended in writing by the parties in accordance with the provisions of this Agreement ("Term").

## 3. **PAYMENT:**

A. Lessee shall pay to V1C, as agent for the Lessors, the Monthly Rent, the Utilization Fee and Minimum Utilization Fee as described in Schedule 4 attached hereto (individually and collectively, the "Lease Fees") during the Term.

B. The Lessee shall pay to V1C, as agent for the Lessors, the Lease Fees in accordance with the Rent Due Date (as defined in Schedule 4) and Utilization Fee Due Dates (as defined in Schedule 4i) (each a "Due Date"). Lessee is responsible as well for transportation, insurance, packing charges, customs duty, and taxes, if any, arising in connection with this Lease, other than taxes set out in Section 19C.

C. All payments shall be made when due without prior demand by wire transfer to the following bank account:

> JPMorgan Chase Bank, New York
> ABA 021 000 021
> A/C Petrus Aviation Lending, LLC
> A/C# 737309401
> Ref: MK V1C ESN 715193

or to such other account as V1C, acting as agent for the Lessors, shall (on reasonable notice) specify in writing to the Lessee.

D. If the Engine is not redelivered on the planned Lease Termination Date (as the same may have been extended in accordance with this Agreement) solely by reason of a default by Lessee, Lessee shall pay to Lessor a daily penalty fee of $1,000.00 per day (in addition to the Lease Fees) ("Daily Penalty Fee") for each day exceeding the Term.

E. If the parties agree to terminate this Lease prior to the Lease Termination Date, as provided for in Articles 1 and 2 herein, Lessors shall reimburse to Lessee Lease Fees paid by Lessee on a per diem basis so that Lessee shall only be responsible for the Lease Fees for the number of days it has possession of the Engine.

F. This Lease is a net lease and the  Lessee's obligations to pay Monthly Rent, the

Utilization Fee and the Minimum Utilization Fee and to make other payments and perform other obligations in accordance with this Lease shall be absolute and unconditional (except as otherwise expressly provided herein) and irrespective of any contingency whatsoever including but not limited to:

(i)    any right of set-off, counterclaim, recoupment, defense, or other right that Lessee may have in the event that any such set-off, counterclaim, recoupment, defense or other right should apply;

(ii)    any insolvency, bankruptcy, reorganization, arrangement, readjustment of debt, dissolution, liquidation or similar proceedings by or against any of the Lessors or the Lessee;

(iii)    any invalidity or unenforceability or lack of due authorization of, or other defect in, this Lease; and

(iv)    any other cause which (but for this provision) would or might have the effect of terminating or in any way affecting any obligation of the Lessee hereunder.

Notwithstanding the foregoing, Lessee shall not be required to continue to pay the Monthly Fee and the Utilization Fee if the Lease is terminated prior to the Lease Termination Date in accordance with the terms hereof; provided, however, that the termination of Lessee's obligation to pay Monthly Fee and the Utilization Fee described in this sentence shall not apply to the termination of the Lease following an Event of Default (hereinafter defined) until the Engine has been returned in the condition required by this Agreement.

The Lessors shall be jointly and severally liable for the payment of any amounts to Lessee under this Agreement.

## 4. <u>Ownership Plate:</u>

A. Pursuant to the Corsair Lease, Lessee has been in possession of the Engine prior to the date hereof

B. Lessee shall provide and place, at its sole cost and expense, an ownership plate on the Engine which includes the statement set forth in Section 20.C hereof and confirm the continued location of same on the Engine in its monthly reports, Appendix 2 attached hereto.

## 5. <u>Cause for Engine Removal, Lease Termination</u>

During the Term, the Engine may be removed from Lessee's fleet and returned to V1C for "qualifying" and "non-qualifying" causes. Causes for a qualifying removal ("Qualifying Removal") and non-qualifying removal ("Non-Qualifying Removal") are defined below. In the case of Qualifying Removals, Lessee will redeliver the Engine in accordance with the terms and conditions herein and this Lease will terminate upon Redelivery and acceptance of the Engine by Lessor at no further expense to Lessee. In the case of a Non-Qualifying Removal, Lessee will redeliver the removed Engine to V1C and will be responsible for either the expense of the Engine shop visit work required to restore the Engine to serviceability or for replacement of the Engine with an engine of similar value to the Engine replaced (based on the replaced Engine's time since last shop visit, cycles remaining to its most restrictive life limited part ("LLP") and the total market value of such Engine's installed LLP), whichever is less costly to Lessee.

A. Qualifying Engine Removal

Removal of the Engine for any of the following causes shall be considered a Qualifying Removal:

i) The removal is necessary to correct an Engine-caused failure or is the result of performance deterioration which exceeds the Manufacturer's operations or maintenance manual limits for on-wing operation and correction of which could not have been performed on-wing as referenced in the applicable maintenance manual;

ii) The removal is necessary to comply with imminent requirements of any alert service bulletin issued by the manufacturer of the Engine, any module or any part or any written directive issued by a party who shall from time to time be vested with the control and supervision of or have jurisdiction over the airworthiness and operation of the Engine (the "Aviation Authority") in respect of the Engine, module or part mandating a specified action or course of action within a specified period of time and, without such compliance the Engine could not be operated further;

iii) The removal is necessary to comply with a Lessor-issued written recommendation regarding removal of the Engine;

iv) The removal is necessary because of the imminent expiration of LLP's; or,

v) The removal is necessary because acceptable troubleshooting by Lessee on-wing could not resolve a discrepancy which was outside of Manufacturer's maintenance manual on-wing serviceable limits or was causing multiple operational interruptions. This case would be considered a Qualifying Removal if Lessee and Lessor (or its designated representative) are in agreement with the required maintenance could not have been reasonably accomplished on-wing or the out of service time necessary to troubleshoot and affect repairs would materially exceed that to remove and replace the Engine.

B. Non-Qualifying Removal.

Removal of the Engine for any of the following causes shall be considered a Non-Qualifying Removal, the cost for repair or replacement of which will be the responsibility of Lessee:

i) All services not specifically included in Paragraph A. of this Article 6;

ii) An accident while such Engine was in the care, custody and control of Lessee or any sublessee;

iii) Damage from a military action;

iv) An act of God;

v) Improper or negligent installation, operation or maintenance of the Engine by Lessee.

vi) Any experimental test or troubleshooting procedure applied to the Engine which led to the Engine's operation exceeding Manufacturer's maintenance manual limits by Lessee;

vii) Use of parts or components installed by Lessee on the Engine which are not in conformance with the applicable manuals or regulations for the specific configuration or specification of the Engine;

viii) A removal required as a result of FOD (as defined below); and

ix) A removal required as a result of Misuse or Abuse (as defined below).

C. Foreign Object Damage

Foreign Object Damage ("FOD") is impact damage to an Engine caused by an object of origin external to the Engine which requires the Engine to be removed from service due to an out of limits condition per the applicable aircraft or Engine maintenance manual.

D. Misuse or Abuse

"Misuse or Abuse" is improper operation or maintenance of an Engine outside of limits prescribed in, or otherwise not in compliance with, procedures specified in the manufacturer's Aviation Authority approved operations and maintenance manuals, as revised for or applicable to Lessee.

## 6. CONDITIONS PRECEDENT:

The obligations of Lessors under this Lease are conditional upon Lessors' receipt of (and the parties acknowledge that documents received by one Lessor shall be deemed to have been received by the other Lessor and the relevant condition satisfied):

A. four duly initialed and executed originals of this Lease and four duly initialed and executed copies of the Acceptance Certificate;

B. an independent insurance broker's report, in form and substance satisfactory to Lessors, describing all insurance and reinsurance then carried and maintained with respect to the Engine and the expiration date thereof, together with certificates of insurance and reinsurance in accordance with Article 16 and Schedule 3 hereof, including a written confirmation from such broker in a form reasonably satisfactory to Lessors that such insurance and reinsurance complies with the terms of Article 16 and Schedule 3 hereof;

C. Aircraft Owner/Mortgagee Acknowledgement in the form attached hereto in Appendix 5 duly executed by each of (i) HSBC and (ii) any other person or entity required to execute and deliver such acknowledgment pursuant to the terms hereof;

D. a duly executed "Consent and Acknowledgment" in favor of Lessors' lender, in the form attached hereto in Appendix 6;

E. resolutions of the management board of Lessee or other written evidence of appropriate authorizing action acceptable to Lessors, duly authorizing the lease of the Engine and the execution, delivery and performance of the Lease, together with documentation acceptable to Lessors as to the person or persons authorized to execute and deliver said documents on behalf of Lessee;

F. a favorable opinion of English counsel for Lessee, dated the date hereof, in form and substance satisfactory to Lessors covering such matters as Lessors may reasonably request in respect of the transactions contemplated hereby;

G. a favorable opinion of FAA counsel acceptable to Lessors, dated the date hereof, addressing the due filing for registration and recordation of this Lease with the FAA;

H. Utilization Fees accrued under the Corsair Lease for the period from June 22, 2007 through July 31, 2007 in the amount of $75,250.00;

I. Monthly Rent accrued under the Corsair Lease for the period from June 22, 2007 through the date hereof in the amount of $30,494.62;

J. Monthly Rent due hereunder for the period from the date hereof through August 31, 2007 in the amount of $14,838.71;

K. a lease termination in the form attached hereto in Appendix 7 (the "Lease Termination") duly executed by Lessee but undated; and

L. such other documents as Lessors may reasonably request from Lessee, in form and substance satisfactory to Lessors.


7. **Security Deposit; Lease Termination:**

A. Upon execution of the Corsair Lease, Lessee paid to Corsair US$75,000 (the "Security Deposit") and Lessors confirm that, in connection with the transfer of the Engine from Corsair to the Lessors and the novation of the Corsair Lease from Corsair to the Lessors, V1C holds the Security Deposit in accordance with the terms hereof. Lessee hereby grants to V1C, as agent for all of the Lessors, a security interest in the Security Deposit. The Security Deposit shall secure all of Lessee's obligations under this Lease. V1C shall be allowed to commingle the Security Deposit with its general funds and any interest earned on the Security Deposit will for the Lessor's account. Upon termination

of this Lease and Lessee's compliance with all of its obligations herein, the Security Deposit will be refunded to Lessee within five (5) business days of termination of this Lease.

B.  The Lessee shall deliver to V1C, as agent for the Lessors, the Lease Termination. V1C shall hold the Lease Termination during the Term and shall not file the Lease Termination with the Federal Aviation Administration or any other agency unless an Event of Default (hereinafter defined) has occurred and is continuing or this Lease terminates in accordance with the terms hereof.

## 8.  REDELIVERY, SHIPMENT, AND ACCEPTANCE:

A.  This Lease shall commence on the Lease Commencement Date.

B.  On the last day of the Term, the Engine will be redelivered (at Lessee's expense) to an airport in the continental United States of America to be agreed between Lessee and V1C ("Redelivery").

C.  Any shipment of the Engine will be at Lessee's risk and expense.

D.  Any other Redelivery Location has to be agreed upon in writing by the parties.

E.  Lessee will confirm acceptance of the Engine by executing Schedule 2 ("Acceptance Certificate") attached hereto.

## 9.  LESSEE'S COVENANTS DURING THE TERM:

A.  Operational Data

i)  During the Term and on the Lease Termination Date, the Lessee shall provide the Lessor with a written statement of the actual hours and cycles of operation of the Engine in the prior month (see Appendix 2). Such statement during the Term shall be provided not later than the tenth (10th) business day of every following month.

B.  Engine Handling

i)  The Lessee shall operate the Engine in accordance with the manufacturer's and the Aviation Authority (or other applicable regulatory authority's) approved operation and maintenance manuals and Lessee's approve additional maintenance and operations requirements, if any.  No changes to the modification status of the Engine are allowed unless agreed to by Lessor.

C.  Line Maintenance

i)  Line Maintenance shall mean the performance and cost of normal routine and non-routine on wing maintenance, and unless any inspection, overhaul, maintenance, service or repair shall result from FOD or other casualty or damage, or misapplication of approved procedures as provided for in the Lessee's Aviation Authority approved maintenance program above, shall only include pre-flight inspection, fluid servicing,

inspection, maintenance and repair of QEC components, engine accessories, and line replaceable units. Lessee is responsible for all Line Maintenance during the Term. Any costs arising in connection with Line Maintenance will be born by the Lessee.

D. Parts Exchange

    i) In case of necessary parts exchange on the Engine, the Lessee will exchange the removed part with a serviceable part from its own stock, with complete traceability and repair history, and of equal or greater value or status and each month will report any such exchange to Lessor on its monthly report, Appendix 2 attached hereto.

E. Property

    i) Lessee will clearly mark the Engine as Lessor's property in accordance with Section 4.C, at Lessee's expense.

## 10. [INTENTIONALLY OMITTED]

## 11. REMOVAL/REDELIVERY:

A. At the end of the Term or upon the Engine becoming unserviceable, Lessee will promptly remove the Engine, preserve the Engine in accordance with approved maintenance manuals and return the Engine to the Goodyear, Arizona in the configuration in which it was delivered.

B. Documentation

Not later than 5 days after removal of the Engine at the end of the Term, the Lessee shall provide the following documentation:

    i) Shipping Documents giving reference to this Lease;

    ii) "Lease Engine Redelivery Sheet" Including the registration number of the aircraft and the position the leased Engine was installed on and the number of flight hours and flight cycles, the Engine was operated by the Lessee (please see Appendix 1);

    iii) A statement indicating the serviceability status of the Engine at removal from the Lessee's aircraft;

    iv) Any available power assurance data and engine condition monitoring data (ECM) including take-off readings throughout the Term;

    v) A written statement that the Engine was operated in accordance with the Engine's manufacturer's rules and recommendations during the Term (please see Appendix 4);

    vi) A written "Non Incident" Statement (please see Appendix 3);

    vii) Missing Parts/Shipped Loose List.

## 12. LEASE RETURN INSPECTION / RETURN CONFIGURATION / "OFF WING" MAINTENANCE

A. Any "off wing" maintenance must be performed or arranged by Lessor only. In case "off wing" maintenance is required during the Term the obligation to pay lease charges continues except in the case of a Qualifying Removal.

B. The Engine shall be returned in the configuration in which it was delivered, fair wear and tear accepted

C. The Lease Return Inspection will include a full video boroscope. Should the Engine be removed for a Qualifying Removal and FOD be discovered during such Lease Return Inspection boroscope procedure, Lessee shall be responsible for the repair of such FOD, only.

## 13. LEASE TERMINATION

A. The actual Term will end on the Lease Termination Date, subject to any extension in accordance with Clause 1A, when the Engine is returned and accepted by Lessor. Such termination will be evidenced by completion of the Lease Return Inspection and the Engine being accepted by Lessor and the open items on the "Lease Engine Redelivery Sheet" being corrected to Lessor's satisfaction (acting reasonably).

B. If, for any reason, the Lessee is unable to return the Engine to the Lessor within the agreed upon Term, the Lessee shall in writing request the consent of the Lessor for extension of the Lease at least 3 days in advance of expiration of the Term.

## 14. EVENT OF DEFAULT

A. It is a fundamental term and condition of this Lease that none of the following events or circumstances shall occur during the Term and that the occurrence of any of them shall constitute a material breach and repudiation by Lessee of this Lease (each an "Event of Default"):

(i) Lessee fails to pay any sum payable by it under this Lease within three Business Days of the due date or, in the case of sums payable on demand, within three Business Days of demand being made in the manner required by this Lease; or

(ii) Lessee breaches any of its obligations or covenants under this Lease and, in respect of any such breach which is capable of remedy, such remedial action as Lessors may require shall not have been taken within five business days from the date upon which any Lessor notifies Lessee of such default and of the remedial action which the Lessors require Lessee to undertake; or

(iii) any representation or warranty made or deemed to be repeated by Lessee is incorrect in any material respect which has a material adverse effect on the ability of the Lessee to perform its obligations hereunder; or

(iv) a creditor takes enforcement action against any of the Lessee's assets which is not discharged within seven days; or

(v)    Lessee suspends or is unable to pay any of its debts as they fall due or commences negotiations with one or more of its creditors with a view to the general readjustment or rescheduling of all or part of its indebtedness or proposes any composition or other arrangement for the benefit of its creditors generally or any class of its creditors or proceedings are commenced in relation to any such reconstruction or re-adjustment of debts; or

(vi)   Lessee or any creditor takes any steps for (i) Lessee to be adjudicated insolvent or wound up, (ii) the appointment of a liquidator, trustee, receiver, examiner, administrator or similar officer to or in respect of Lessee or the whole or any part of its undertaking, assets, rights or revenues, or (iii) the judicial or court protection of Lessee from its creditors; or

(vii)  Lessee threatens to suspend or cease to carry on its business; or

(viii) all or a material part of the undertakings, assets, rights or revenues of Lessee are seized, nationalized, expropriated or compulsorily acquired by or under the authority of any government; or

(ix)   Lessee threatens to dispose of all or a material part of its assets, whether by one or a series of transactions, related or not, other than for the purpose of a solvent reconstruction or amalgamation the terms of which have received the previous consent of Lessor (not to be unreasonably withheld or delayed); or

(x)    the Engine suffers any material repairable damage and Lessee fails to commence the repair of such damage within 30 days from the date upon which such damage occurred and/or thereafter by a deliberate act or omission frustrates or delays completion of such repair; or

(xi)   Lessee shall dispose of or sell the Engine or create or suffer to exist any mortgage, charge (whether fixed or floating), pledge, lien, hypothecation, assignment, security interest, title retention or other encumbrance of any kind other than Permitted Liens securing, or any right conferring a priority of payment in respect of, any obligation of any party ("Encumbrances") over the Engine or challenge the ownership and title of Lessor to the Engine; or

(xiii) if for any reason whatsoever any Insurances with respect to the Engine and the transactions contemplated by this Agreement which may have been required are cancelled or not renewed upon terms and conditions satisfactory to Lessor (acting reasonably).

For the purposes of this Clause, **"Permitted Lien"** means:

(a)    any Encumbrance in respect of taxes not assessed or, if assessed, not yet due and payable, or being contested in good faith by appropriate proceedings;

(b)    any Encumbrance of a repairer, mechanic, carrier, hangarkeeper, airport, air navigation authority or other similar lien arising in the ordinary course of business, by operation of law in respect of obligations which are not overdue or are being contested in good faith by appropriate proceedings;

(c)    any Encumbrance created by or through Lessor,

(d)    Encumbrances arising out of judgements or awards against Lessee with respect to which, at the time an appeal or proceeding for review is being prosecuted in good faith and for which a stay of execution has been granted.

B.  If an Event of Default occurs and is continuing, Lessor may at its option, at any time:

(i)    by notice to Lessee (hereinafter a "Termination Notice") accept such repudiatory breach by Lessee and immediately terminate the Lease whereupon Lessee's right to possess and operate the Engine pursuant to the terms of the Lease, shall terminate; and/or

(ii)    subject to any mandatory provisions of law in the jurisdiction in which the Engine is at such time located:

(a)    take possession of the Engine, and Lessee agrees that Lessor may for this purpose enter upon any premises where the Engine may be located, and Lessor shall be entitled to act and is hereby constituted as attorney for Lessee in effecting such repossession and in carrying out all acts and executing all documents to effect such repossession and transportation to a location acceptable to Lessor, or

(b)    request Lessee to redeliver the Engine to the airport Lessor may in its absolute discretion nominate or direct that the Engine remain at the location where, at the time of issuing a Termination Notice, it is based without further use or operation; and/or

(iii)    require Lessee to take all steps necessary to effect the export of the Engine from the jurisdiction where it is for the time being situated and to enable the Engine to be redelivered to Lessor in the redelivery condition as set forth in Section 11 to this Lease. Following termination of the Lease, Lessor shall be

free to lease, sell or otherwise dispose of the Engine as it may in its absolute discretion think fit; and/or

(iv)    revoke or vary any Termination Notice, provided that any such revocation or variation shall not prevent Lessor from subsequently issuing any further Termination Notice in relation to either any event occurring prior to upon or subsequent to the date of the revocation or variation of the original Termination Notice; and/or

(v)    retain the Security Deposit and apply such amount to any amounts due and owing to the Lessors under this Lease; and/or

(vi)    file the Lease Termination with the FAA or any other agency.

**PROVIDED** that nothing herein shall qualify Lessors' obligation to mitigate their Losses.

## 15. SUBLEASING

The Lessee will not at any time sublease the Engine to any third party without the prior written consent of the Lessor.

## 16. ASSIGNMENT:

A. The Lessee may not assign or transfer any of its rights or obligations hereunder without the prior written consent of the Lessor. The Lessor may assign all or any of its rights under this Lease, provided such assignment does not materially increase the obligations or decrease the rights of Lessee.

B. The Lessee's rights will be solely those of a Lessee and nothing contained herein is intended or will be interpreted as granting to the Lessee any other right, title, interest in or to the Engine, whether legal or equitable.

## 17. LIABILITY / INDEMNIFICATION

A. The Lessee will indemnify and hold harmless (i) V1C, (ii) HWC, (iii) HBC, (iv) Petrus Aviation Lending, LLC, any lender that provides or has provided financing to any or all of the Lessors and which has been granted a security interest in the Engine (a "Lessor Lender") and (v) their respective directors, officers, managers, employees, members, shareholders, agents and subcontractors (collectively, the "Indemnitees" and each individually, an "Indemnitee") from and against any and all liabilities, claims, penalties, fines, liens, demands, suits, damages and losses (including without limitation all reasonable attorney's fees, costs and expenses in connection therewith or incident thereto), including without limitation for deaths of or injuries to any persons whomsoever (including without limitation the Lessee's employees), for loss of or

damage to or delay in the delivery of any property whatsoever (including without limitation any aircraft on which the Engine may be installed and loss of use thereof), in any manner arising out of or in any way connected with the condition, delivery, ownership (including warranty, product liability and strict liability in tort by virtue of ownership) leasing, storage, transporting, installation, operation, maintenance or use of the Engine while under the care and custody of the Lessee during the Term, or the attachment or detachment of any equipment in connection with the delivery or redelivery of the Engine hereunder unless such damage, loss, injury or death is caused by the gross negligence or the willful misconduct of any of the Indemnitees.

C.  V1C, HBC and HWC will indemnify and hold harmless the Lessee, its directors, officers, employees, agents and subcontractors from and against any and all liabilities, claims, penalties, fines, liens, demands, suits, damages and losses (including without limitation all reasonable attorney's fees, costs and expenses in connection therewith or incident thereto), including without limitation for deaths of or injuries to any persons whomsoever (including without limitation the Lessors' employees), for loss of or damage to or delay in the delivery of any property whatsoever (including without limitation any aircraft on which the Engine may be installed and loss of use thereof), in any manner arising out of or in any way connected with the condition, delivery, ownership (including warranty, product liability and strict liability in tort by virtue of ownership) leasing, storage, transporting, installation, operation, maintenance or use of the Engine while under the care and custody of any of the Lessors prior to the commencement of the Term, unless such damage, loss, injury or death is caused by the gross negligence or the willful misconduct of the Lessee.

## 18. INSURANCE

A.  As and from the date hereof and throughout the Term the Lessee shall, while the Engine is installed upon an aircraft operated by Lessee; procure or cause to be procured compliance with and maintain in full force and effect the insurances satisfactory to the Lessor which shall be paid for by the Lessee and shall comply with the provisions of Schedule 3 ("Insurances") and shall furnish the Lessor with such documentation as the Lessors may require to evidence such Insurances. While the Engine is retained as a spare, the Lessee shall insure the Engine under a spares insurance policy, which shall include but not be limited to transportation coverage in a form and on terms and conditions completely acceptable to the Lessor. The Lessor's requirements are set out in Schedule 3.

B.  Lessee shall, within 72 hours of the occurrence of any damage to the Engine not constituting an Event of Loss that Lessee is obligated to repair, notify Lessor and Lessor's Lender of such damage and include in such notice the identity of the repair facility and workscope Lessee shall use for such repair.  Lessor and Lessor's Lender shall, within 72 hours of their receipt of such notice, notify Lessee if such facility and workscope are acceptable and, if acceptable, will instruct the insurer to apply insurance proceeds of such damage to the payment (or to reimburse Lessee) for repairs or

replacement upon Lessor and Lessor's Lender being satisfied that the repairs or replacement have been effected in accordance with this Lease.

## 19. TAXES

A.  All amounts receivable by Lessors under this Lease are stated herein exclusive of any and all forms of taxation, levy, impost, duty, or charge or fee of similar nature and whether imposed by a government entity and, shall include, without limitation, any value added, sales, turnover, trade profits, stamp duty, documentary, registration, withholding, retention and other such taxes together with all surcharges, fines, penalties, costs, charges and expenses payable in connection with any failure to pay or delay in paying any taxes ("Taxes") payable in respect thereof and shall be made gross, free of any rights of counterclaim or set-off and without any deductions or withholdings of any nature.

B.  Lessee shall be responsible and shall indemnify each of the Lessors for payment of the following Taxes:

   (i)  all Taxes assessed and payable in Lessee's country of incorporation and, if different, its country of tax residence ("Lessee's Country") in connection howsoever with this Lease;

   (ii)  all Taxes assessed and payable outside Lessee's Country resulting from the delivery, use, possession, operation, return, storage, maintenance, protection, import or export of the Engine prior to the end of the Term relating to the affected Engine;

   (iii)  all Taxes assessed and payable outside Lessee's Country on the income, profits or gains of Lessee;

   (iv)  all Taxes resulting from any Encumbrances; and

   (v)  all Taxes imposed on any indemnity payments due from Lessee to any Indemnitee pursuant to this Lease.

C.  Lessors shall be responsible for payment of all Taxes:

   (i)  which are not included in Section 19.C and which are assessed and payable outside Lessee's Country on any Lessor resulting solely and directly from such Lessor's ownership of the Engine;

   (ii)  to the extent imposed as a result of any connection between any Lessor and the jurisdiction imposing the Tax that is unrelated to the transactions contemplated by this Lease; or

(iii)    imposed with respect to any period prior to the date hereof; or

(iv)    imposed by any Government Entity on or as the result of the sale, transfer, assignment (whether legal or equitable) or other disposition by any Lessor of any of its rights with respect to the Engine; or

(v)    to the extent imposed as a result of the gross negligence or willful misconduct of any Lessor or as a result of the breach by any Lessor of any of its obligations under this Lease.

D.  If Lessee is required by law in any relevant jurisdiction to make any deduction or withholding from any payment hereunder, it shall (i) promptly notify Lessors of such requirement (ii) do so in full and on time and (iii) to the extent to which Lessee is responsible for the payment of such deduction or withholding, the sum due from Lessee in respect of such payment shall be increased to the extent necessary to ensure that, after such deduction or withholding, Lessors receive and retain (free of any liability) a net sum equal to the sum they would have received and retained had no deduction or withholding been required.

E.  If gross payments are prevented by law, Lessee shall indemnify each of the Lessors against all consequential Losses incurred by any such Lessor through its receipt of a sum less than the full amount due from Lessee hereunder. The amount for which Lessee is obliged to indemnify the Lessors shall be no greater than the amount of the deduction or withholding.

## 20.  TITLE TO ENGINE

A.  Title to the Engine shall remain at all times vested in Lessors and shall not accede to any airframe or aircraft upon which the Engine may be installed.  Lessee will not permit any lien, claim, mortgage, or encumbrance except those liens arising by or through Lessors, to attach to the Engine.

B.  Lessee shall not permit the Engine to be installed on any airframe without V1C's prior written consent.  If V1C consents to the installation of any Engine on any airframe, Lessee shall not install such Engine on such airframe unless Lessee obtains from any third party that has an ownership, security, lien or leasehold interest in such airframe a written signed acknowledgment from such third party in the form attached hereto as Appendix 5 that neither it nor its successors and assigns will acquire or claim any right, title, or lien on the Engine.

C.  Lessee's rights with respect to the Engine are solely those of a lessee and nothing contained herein is intended or will be interpreted as granting to Lessee any other right, title, or interest in or to the Engine, whether legal or equitable.  Lessee hereby waives any

right to title to any of the Engine. Lessee will affix to the Engine a placard which is clearly visible and which reads:

> "THIS ENGINE IS OWNED BY V1C-23244 LLC, HBC-GSKY LLC AND HWC-GSKY LLC AND IS SUBJECT TO A SECURITY INTEREST IN FAVOR OF PETRUS AVIATION LENDING, L.L.C."

and Lessee will assure that such placard remains attached to the Engine throughout the Term.

## 21. QUIET ENJOYMENT

Each of the Lessors covenants and agrees that, provided no Event of Default has occurred and is continuing, none of Lessors nor any person claiming by or through any of the Lessors shall interfere with the quiet use, possession and enjoyment of the Engine by Lessee during the Lease Term.

## 22. CONFIDENTIALITY:

A. Each party hereto (except with the prior written consent of the other party) agrees:

   (i)    not to disclose details of this Lease to any third parties other than its financial and legal advisers, its lenders and/or as required by governmental regulations; and,

   (ii)   to maintain confidentiality of all information exchanged between the parties, including pricing information and other proprietary knowledge, and not to use such for the benefit of any third party.

   (iii)  such confidentiality shall survive for a period of two years following the expiration or earlier termination of this Agreement.

## 23. LAW AND JURISDICTION

A. This agreement and any legal matters that may arise out of or in connection with this agreement will be subject and construed in accordance with the laws of the state of New York, United States of America without giving effect to the conflict of laws provisions thereof (other than Sections 5-1401 and 5-1402 of Title 14 of Article 5 of the General Obligations Law of the State of New York).

B. EACH OF LESSORS AND LESSEE IRREVOCABLY AGREES THAT ANY LEGAL SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING SOLELY TO THIS LEASE OR THE TRANSACTIONS CONTEMPLATED HEREBY SHALL BE INSTITUTED IN THE STATE OR FEDERAL COURTS IN THE BOROUGH OF MANHATTAN, CITY OF NEW YORK, STATE OF NEW YORK, AND IT HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH IT MAY HAVE NOW OR HEREAFTER TO THE

LAYING OF THE VENUE OR THE JURISDICTION OR THE CONVENIENCE OF THE FORUM OF ANY SUCH LEGAL SUIT, ACTION OR PROCEEDING AND IRREVOCABLY SUBMITS GENERALLY AND UNCONDITIONALLY TO THE JURISDICTION OF ANY SUCH COURT BUT ONLY IN ANY SUCH SUIT, ACTION OR PROCEEDING. EACH OF SELLER AND PURCHASER FURTHER IRREVOCABLY AGREES TO THE SERVICE OF PROCESS OF ANY OF THE AFOREMENTIONED COURTS BUT ONLY IN ANY SUIT, ACTION OR PROCEEDING OF THE NATURE REFERRED TO ABOVE BY THE MAILING OF THE COPIES THEREOF BY CERTIFIED MAIL, POSTAGE PREPAID, RETURN RECEIPT REQUESTED, TO IT AT ITS ADDRESS SPECIFIED HEREIN, SUCH SERVICE TO BE EFFECTIVE UPON THE DATE OF RECEIPT INDICATED ON THE POSTAL RECEIPT RETURNED FROM IT.

C. Waiver of Jury Trial. THE LESSEE AND THE LESSORS HEREBY WAIVE TRIAL BY JURY IN ANY JUDICIAL PROCEEDING TO WHICH THEY ARE PARTIES INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER ARISING OUT OF OR RELATING TO THIS LEASE.

## 24. DISCLAIMER:

NONE OF THE LESSORS SHALL HAVE MADE NOR SHALL BE DEEMED TO HAVE MADE OR TO MAKE ANY WARRANTIES, REPRESENTATIONS OR GUARANTEES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY WARRANTIES REPRESENTATIONS OR GUARANTES OF THE FOLLOWING: (I) THE AIRWORTHINESS, VALUE, CONDITION, DESIGN, COMPLIANCE WITH SPECIFICATIONS, DURABILITY OR OPERATION OF, OR QUALITY OF THE MATERIAL OR WORKMANSHIP IN, OR ABSENCE OF ANY DEFECTS (INCLUDING BUT NOT LIMITED TO ANY LATENT DEFECTS), WHETHER OR NOT DISCOVERABLE, OR ANY DEFECT IN, THE ENGINE, ANY PART, ANY RECORDS RELATED THERETO, OR ANY OTHER THING DELIVERED, LEASED OR TRANSFERRED HEREUNDER, AND (II) **ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR USE OR FOR A PARTICULAR PURPOSE OF THE ENGINE, ANY PART, ANY RECORDS RELATING TO THE ENGINE, OR ANY OTHER THING DELIVERED, LEASED OR TRANSFERRED HEREUNDER**. NONE OF THE LESSORS SHALL HAVE ANY OBLIGATIONS OR LIABILITIES WITH RESPECT TO (A) ANY ACTUAL OR ALLEGED INFRINGEMENT OF ANY PATENT, TRADEMARK OR COPYRIGHT OR THE LIKE, OR ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE, (B) ANY RIGHT, CLAIM OR REMEDY IN TORT WITH RESPECT TO THE ENGINE, ANY PART THEROF, ANY RECORDS RELATING TO THE ENGINE, ANY OTHER ITEM OR ANY OTHER THING DELIVERED, LEASED OR TRANSFERRED HEREUNDER, WHETHER OR NOT IN STRICT OR ABSOLUTE LIABILITY OR ARISING FROM THE NEGLIGENCE OF ANY LESSOR, ACTUAL OR IMPUTED (INCLUDING, WITHOUT LIMITATION, ANY STATUTORY WARRANTY OR CONDITION UNDER THE LAWS OF THE STATE OF NEW YORK), OR (C) ANY RIGHT, CLAIM OR REMEDY FOR LOSS OF, OR DAMAGE

TO, THE ENGINE, ANY PART, ANY RECORDS RELATED THERETO, OR ANY OTHER THING, FOR ANY LOSS OF USE, REVENUE OR PROFIT, OR ANY OTHER DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES. LESSEE HEREBY WAIVES ANY RIGHTS OR CLAIMS AGAINST LESSOR WITH RESPECT TO ANY OF THE FOREGOING SPECIFIED IN THE TWO IMMEDIATELY PRECEDING SENTENCES AND ALL RISKS OF ANY NATURE INCIDENT THERETO ARE TO BE BORNE BY LESSEE. LESSORS LEASE THE ENGINE HEREUNDER "AS IS," "WHERE IS" AND WITH ALL FAULTS AND DEFECTS, IF ANY.

## 25. <u>EVENT OF LOSS:</u>

Upon the occurrence of an Event of Loss (hereinafter defined) with respect to the Engine: (i) Lessee will immediately notify Lessors thereof and (ii) Lessee will pay to Lessors or Petrus Aviation Lending, LLC as their interests appear on the earlier of (a) the date the insurers distribute the insurance proceeds for such Event of Loss or (ii) sixty (60) days after the occurrence of such Event of Loss, an amount equal to Agreed Value (as such term is defined in Schedule 4 attached hereto), together with all payments of Basic Rent through the date the Lessors receive the Agreed Value. Upon receipt by Lessors or Petrus Aviation Lending, LLC of the amounts specified in the immediately preceding sentence, this Lease will terminate and Lessors shall transfer all of their respective right, title and interest in and to the Engine to the Lessee, subject to the rights of any affected insurance company. For purposes of this Lease, the term "Event of Loss" means: (A) the total loss or destruction of the Engine or damage to the Engine to an extent determined in good faith by V1C to render repair impracticable or uneconomical; (B) the loss of the Engine or its being permanently rendered unfit for use for any reason whatsoever; or (C) the confiscation, theft, disappearance or seizure of, or requisition of title to or use of the Engine continuing for longer than a period which ends as of the earlier of (I) the expiration of sixty (60) days after such confiscation, theft, disappearance, seizure or requisition or (II) the receipt of insurance or other proceed with respect thereto.

## 26. <u>REPRESENTATIONS:</u>

The Lessee, for the benefit of the Lessors, makes the representations, warranties and covenants set forth on Schedule 5.

## 27. <u>NOTICES:</u>

Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, telegraphed, telexed, sent by facsimile transmission or sent by certified or registered mail postage prepaid or by an international courier service. If such notice or other communication is telegraphed, telexed or sent by facsimile transmission, it shall promptly be confirmed by mail as set forth above. Any such notice shall be deemed given when so delivered personally, telegraphed, telexed or sent by facsimile transmission or, if mailed, three business days after the date of deposit in the United States mail, or if sent by international courier, on the

date such courier confirms delivery of the package. All notices or other communication to a party hereunder shall be sent to the address for such party specified on Schedule 6 attached hereto.

## 28. <u>COUNTERPARTS</u>

This Lease may be executed in any number of counterparts each of which shall be an original and all such counterparts taken together shall be deemed to constitute one and the same agreement.

## 29. <u>FURTHER ASSURANCES</u>

Lessee undertakes to execute, sign, perfect, do and (if required) register every such further document as in any of the Lessor's reasonable opinion may be necessary or desirable to carry out more effectively the intent and purpose of any Lease and/or as may be required by any applicable law and to establish, protect and maintain any of the Lessor's rights and remedies created or intended to be created thereunder, including without limitation an assignment of insurances and an assignment of lease to be filed with the Companies House within the United Kingdom.

*     *     *

**SCHEDULE 1**

**DESCRIPTION OF ENGINE**

1.    Description:

Engine Manufacturer:       Pratt & Whitney
Engine Model:              JT9D-7R4G2
Engine Serial No:          715193
QEC Status:                Neutral
Transportation Stand: provided: One

2.    Condition:
The Engine shall be in the condition noted in the documents, copies of which have or were delivered to the Lessee on or before delivery under the Corsair Lease;

**SCHEDULE 2**

**ACCEPTANCE CERTIFICATE**

1. MK Airlines Limited (the "Lessee") hereby acknowledges that on _____ the Lessee has possession of a JT9D-7R4G2 engine bearing serial number 715193 (the "Engine") and that pursuant to the terms of the Amended and Restated Engine Lease Agreement dated August 8, 2007 (the "Lease") made between V1C-23244 LLC, HWC-GSKY LLC and HBC-GSKY LLC (collectively, the "Lessors") and the Lessee, the Term therein referred to commences on the Lease Commencement Date and the Lessee further acknowledges that henceforth the Engine shall be subject to all the terms and conditions contained in the Lease.

2. The Lessee confirms that it has accepted delivery of the Engine under the Corsair Lease and that no further physical delivery of the Engine is required.

Dated this _____ day of _____ 2007.

Signed by: _____

Name: _____

Title: _____

## SCHEDULE 3

## INSURANCE

1. The Lessee will procure and maintain in full force and effect to procure and maintain in full force and effect at all times during the term of this Lease policies of insurance of the type and in the minimum amounts stated below and with companies acceptable to the Lessors under terms reasonably satisfactory to the Lessors:

2. **Liability**: COMPREHENSIVE AIRLINE LIABILITY, THIRD PARTY, PASSENGER, BAGGAGE, CARGO, AIRLINE GENERAL THIRD PARTY LEGAL LIABILITY, PERSONAL INJURY, PRODUCT LIABILITY, WAR RISKS LIABILITY COVERAGE AND CONTRACTUAL LIABILITY COVERAGE for a combined single limit (bodily injury/property damage) of 500,000,000 USD in respect of any one accident/occurrence naming each of VIC, HBC, HWC, each Lessor's Lender, and their respective directors, officers, managers, employees and members, as additional insureds (collectively, the "Additional Insureds") . Such policy will expressly cover the obligations assumed by the Lessee in Article 14 of the Lease.

(a) **Hull**:   HULL ALL RISKS INSURANCE for loss or damage whilst flying and on the ground (including the Engine while attached to an airframe or removed and not replaced and including the Engine Technical Records in possession of Lessee and Spares Insurance (including transit) while the Engine is not attached to an airframe) for the Agreed Value as stated on page 2, article 1 of this Lease.

While attached to an airframe, the agreed value of the airframe has to be automatically increased by the Agreed Value of the Engine

HULL WAR AND ALLIED RISKS INSURANCE including hijacking and confiscation and other risks presently excluded by AVN48 (B), and including confiscation by the government of the state of registration, for the Agreed Value as stated on page 2, article 1 of this Lease (to include cover for the Engine Technical Records and Spares coverage (including while in storage or transit) while the Engine is not attached to an Airframe).

Such policies shall confirm a waiver of subrogation in favor of each of the Additional Insureds.

(b) **Spares**: ALL RISK SPARES INSURANCE, INCLUDING IN TRANSIT COVERAGE, on the Engine covering any damage, which may occur while in Lessee's care, custody, and control but not then attached to an aircraft in a minimum amount not less than the Agreed Value as stated on page 2, article 1 of this Lease for such Equipment. Such policy shall confirm a waiver of subrogation in favor of each of the Additional Insureds  and shall the Lessor's Lender as sole loss payee.

3. **AVN 678**: All insurance coverage listed in Section 1 shall be in accordance with AVN 67B.

4. **Subrogation**: All policies will provide that all insurance carriers, including the hull insurance carrier for the aircraft on which any Engine may be installed, waive any and all rights of subrogation that such carriers may or could have against the Additional Insureds by virtue of such insurance contracts.

5. **Deductibles:** Any deductibles in the insurance coverage described in Section 1 are the sole responsibility of the Lessee and will be paid to the designated loss payee of such insurance.

6. **Breach Warranties:** All of the policies of insurance required of the Lessee will include breach of warranty protection in favor of insureds.

7. **Primary:** All Insurances provided under this Agreement shall be primary and without any right of contribution from any other insurance which may be available to the Additional Insured.

8. **Notice of Cancellation:** All policies will provide that Insureds will be given thirty (30) days prior written notice by the insurers of policy cancellation or material change thereof except for the war risk coverages which will require seven (7) days prior written notice.

9. **Insurance certificates:** The Lessee will provide V1C with certificates of insurance naming the Lessor's Lender as sole loss payee.

10. **Losses:** All losses will be adjusted with Insureds.

11. **Other:** All policies required hereunder will include a. a severability of interest clause, b. waiver of set-off or counterclaim c. recognition that Insureds' right to pay premiums is not an obligation to pay premiums, and d. a 50/50 provisional claims settlement clause.

12. **Sub-lease:** In case of any Sublease (approved by the Lessor) the Lessee shall cause any Sub-Lessee to procure and maintain in full force and effect at all times during the term of the respective Sublease policies of insurance of the type and in the minimum amounts stated in 1-11 above.

## SCHEDULE 4

## FINANCIAL TERMS

**Monthly Rent**    US$20,000.00 for each month (the "Monthly Rent") of the Rent Term (defined below) will be paid in advance by Lessee to VIC, acting as agent for the Lessors, on the first business day of each calendar month during the Rent Term and the prorated Monthly Rent of US$666.67 per day will be paid in advance on the first day of the Rent Term for the first partial month of the Rent Term and the prorated Monthly Rent for the partial month at the end of the Term shall be paid on the first business day of such partial month as well as for the last partial month of the Term (each a "Rent Due Date").

**Utilization Fee**    US$250.00 for each flight hour the Engine is operated in that month (the "Utilization Fee") will be paid by Lessee to VIC, acting as agent for the Lessors, within ten (10) calendar days following the last day of each calendar month of the Rent Term (the "Utilization Fee Due Date"). Lessee shall pay for a minimum utilization of two hundred twenty five (225) Engine flight hours for each whole month of the Rent Term (US$56,250), or seven and one half (7.5) Engine Flight Hours per day for any partial month of the Rent Term (the "Minimum Utilization Fee").

**Rent Term**    means the period (a) commencing on the Lease Commencement Date and (b) ending on the Lease Termination Date.

**Agreed Value**    US$2,000,000.00.

## SCHEDULE 5   REPRESENTATIONS AND WARRANTIES

Lessee represents, warrants and covenants that:

(a)      Lessee (i) is a company incorporated and existing under the laws of England and (ii) has the corporate power to carry on its business as it is currently being conducted, to enter into and consummate the transactions contemplated by this Lease and (iii) to perform its obligations thereunder;

(b)      the execution, delivery and performance of this Lease have been duly authorized by all necessary corporate action on the part of Lessee and no action has been taken or resolution passed that is contrary to such authorization;

(c)      this Lease constitutes the legal, valid and binding obligations of Lessee;

(d)      each consent required by Lessee to authorize, or required by it in connection with the execution, delivery, performance, legality, validity or enforceability of this Lease and the transactions contemplated hereunder has been obtained and is in full force and effect, and there is no default in the observance or performance of any of the conditions and restrictions (if any) imposed on or in connection therewith;

(e)      the execution, delivery and performance by Lessee of this Lease and the performance by Lessee of its obligations hereunder will not (i) conflict with, or result in any material breach of, any of the terms of, or constitute a default under, any agreement or document to which it is a party or by which it or any of its property or assets may be bound; (ii) contravene or conflict with the provisions of its constitutive documents; or (iii) conflict with any laws binding on Lessee;

(f)      all authorizations, consents, registrations and notifications required in connection with the execution and delivery of this Lease by the Lessee and the performance of the obligations of the Lessee hereunder have been obtained and are in full force and effect;

(g)      no litigation, arbitration or administrative proceedings are pending or, to the knowledge of Lessee, threatened against Lessee which, if adversely determined, would have a material adverse effect upon the Lessee's financial condition or business or on its ability to perform its obligations under this Lease and no action has been taken or resolution passed that is contrary to such authorizations, consents, registrations or notifications;

(h)      Lessee will comply in all respects with all laws, ordinances, rules, regulations and orders of all governmental authorities, applicable to the Lessee and the installation, operation, and maintenance of the Engine.

**SCHEDULE 6    ADDRESSES**

| | | |
|---|---|---|
| **If to Lessee:** | **MK Airlines Limited** | Tel:    +44 1892 770011 |
| | Landhurst | |
| | Hartfield | |
| | East Sussex | |
| | TN7 4DH | |
| | England | |
| | Attn;  Mike Kruger | Fax: +44 1892 770022 |

| | | |
|---|---|---|
| **If to Lessors:** | **V1C-23244 LLC** | Tel:  415 296-5272 |
| | c/o Vx Holdings | Fax:  415 296-5260 |
| | 915 Front Street | |
| | San Francisco, CA 94111 | |
| | Attn: William B. Hudson | |
| | **HBC-GSKY LLC** | Tel:  415 296-5272 |
| | c/o Vx Holdings | Fax:  415 296-5260 |
| | 915 Front Street | |
| | San Francisco, CA 94111 | |
| | Attn: Robert Brown | |
| | **HWC-GSKY LLC** | Tel:  415 296-5272 |
| | c/o Vx Holdings | Fax:  415 296-5260 |
| | 915 Front Street | |
| | San Francisco, CA 94111 | |
| | Attn: William Hudson | |
| **With copies to:** | **V1C-23244 LLC** | Tel:  415 296-5272 |
| | c/o Vx Holdings | Fax:  415 296-5260 |
| | 915 Front Street | |
| | San Francisco, CA 94111 | Tel:    415 296-5255 |
| | Attn: Gary Lew | Fax:    415 296-5260 |

IN WITNESS WHEREOF, the undersigned have entered into this Amended and Restated Engine Lease Agreement on and as of the date first set forth above.

LESSEE:

**MK AIRLINES LIMITED**

By:        _____
Name:      _____ M. Kavner . _____
Title:     _____ Director _____

LESSORS:

**V1C-23244 LLC**
**By: Vx Capital Partners LLC**

By:        _____
Name:      _____
Title:     _____

**HBC-GSKY LLC**

By:        _____
Name:      _____
Title:     _____

**HWC-GSKY LLC**

By:        _____
Name:      _____
Title:     _____

IN WITNESS WHEREOF, the undersigned have entered into this Amended and Restated Engine Lease Agreement on and as of the date first set forth above.

LESSEE:

**MK AIRLINES LIMITED**

By:       _____
Name:   _____
Title:     _____

LESSORS:

**V1C-23244 LLC**
By: Vx Capital Partners, LLC

By:       _____
Name:   William Hudson
Title:     Manager

**HBC-GSKY LLC**

By:       _____
Name:   _____
Title:     _____

**HWC-GSKY LLC**

By:       _____
Name:   William Hudson
Title:     Manager

**IN WITNESS WHEREOF,** the undersigned have entered into this Amended and Restated Engine Lease Agreement on and as of the date first set forth above.

LESSEE:

**MK AIRLINES LIMITED**

By: _____
Name: _____
Title: _____

LESSORS:

**V1C-23244 LLC**
**By:  Vx Capital Partners LLC**

By: _____
Name: _____
Title: _____

**HBC-GSKY LLC**

By: _Robert Brown_
Name: _Robert Brown_
Title: _Manager_

**HWC-GSKY LLC**

By: _____
Name: _____
Title: _____

**Appendix 1**

**Telefax or email to William B. Hudson**
**Lease Engine Redelivery Sheet**
**Engine Lease Department Fax: +1.415.296.5260**

**Redelivery of Engine Serial No. 715193**
**Type: JT9D-7R4G2**
**Lease Start: TT:          TC:                    TSLSV:              CSLSV:**
**Term: _____**
*Please facsimile following information prior to Engine redelivery:*
**Date of Installation: _____**
**Date of Removal: _____**
**Aircraft Registration number & Engine Position: _____**
**Operated Flight Hours: _____**
**Flight Cycles: _____**

| | | |
|---|---|---|
| Operation discrepancies during Term: If yes, which complaints (or attached documents): | yes | no |
| Power assurance test performed before Engine removal: If yes, any complaints (or attached documents): | yes | no |
| Engine Condition Monitoring (ECM) data attached: | yes | no |
| ECM data including take off readings attached: | yes | no |
| Video-Borescope inspection performed during Term: | yes | no |
| If yes which findings (or attached documents): | yes | no |
| Engine preserved per MM (30-365 days): | yes | no |
| Missing Parts / Shipped Loose List attached: | yes | no |
| Engine serviceable Tag attached to Engine: | yes | no |
| Local Airworthiness Authority Tag | yes | no |
| EASA Form 1 | yes | no |
| FAA Form 8130-3 | yes | no |

| List AD's and SB's compiled with during the Term If yes which (or attached documents): | yes | no |
| --- | --- | --- |

**Note:** In the event that the Engine thrust rating is changed during the operation, such change should be treated as a removal and re-installation for the purpose of this report.

**Operator:     Name:              Title:                    Signature:              Date:**
**(Please Print)**

**Appendix 2**

**Monthly Report Form**
**Telefax to (415) 296-5260 or email to andrea@vxcapital.com**

This report must be completed by the Customer / Operator for each calendar month of operation of the Engine before the 5th business day of the subsequent month.

| Customer / Operator: | MK Airlines Limited |
|---|---|
| Engine Serial No.: | 715193 |
| Engine Type: | JT9D-7R4G2 |
| Month of Operation: | |
| **Engine Installation And Utilization Data:** | |
| Installation Date: | |
| Aircraft Registration: | |
| Aircraft Owner: | |
| Aircraft Position: | |
| Engine flight hours for month: | |
| Engine cycles for month: | |
| Current TSN & CSN of the Engine: | / |
| **Engine Removal:** | |
| Planned removal date: | |

Engine Components Removed During Month:        Y/N
If Yes, identify:

Engine Placard Installed:        Y/N

Comments:
_____
_____
_____
_____

**Note,** if engine thrust rating were changed during month of operation, such change should be treated as a removal and re-installation for the purpose of this report.

Signed: _____

Name : _____ ( please print)

Title: _____

Date: _____

**Appendix 3**

(Please use MK Airlines Limited's Company Letterhead)


**Non-Incident Statement**

JT9D-7R4G2 ESN 715193 has not been involved in, nor removed from an aircraft that was involved in an incident or accident, major failure, or fire nor has the Engine nor the parts installed on it been subjected to extreme stress or heat nor obtained from any Government, Military, or Unapproved Source.


Lease Commencement Engine Total Time/ Total Cycles:
Lease Termination Engine Total Time/Total Cycles:


Signed by: _____


Name: _____


Title: _____


Date: _____

**Appendix 4**

**(Please use MK Airlines Limited's Company Letterhead)**


**Statement**
**MK Airlines Limited** certifies that the leased Engine JT9D-7R4G2 ESN 715193 was operated in accordance with the engine manufacturer's rules and recommendations during the Term.


Lease Commencement Engine Total Time/ Total Cycles:
Lease Termination Engine Total Time/Total Cycles:


Signed by: _____


Name: _____


Title: _____


Date: _____

**Appendix 5**

**AIRCRAFT OWNER/MORTGAGEE ACKNOWLEDGMENT**

*A SEPARATE ONE TO BE SIGNED BY EACH OWNER, LESSOR, MORTGAGEE AND
SECURED PARTY OF THE AIRFRAME ON WHICH THE ENGINE IS INSTALLED*

Date:

Re:  MK Airlines Limited

      Reference is made to the Amended and Restated Engine Lease Agreement dated as of
_____ __, 2007 (as at any time amended or supplemented, the "Lease") by and between
V1C-23244 LLC, a Delaware limited liability company, HBC-GSKY LLC, a California limited
liability company and HWC-GSKY LLC, a California limited liability company (collectively,
the "Lessors") and MK Aviation Limited, an English company ("Lessee") pursuant to which the
Lessors have agreed to rent and lease to the Lessee one  Pratt & Whitney model JT9D-7R4G2
engine bearing manufacturer's serial number 715193 with QEC (the "Engine") on the terms and
conditions set forth in the Lease

      The undersigned is the _____ [list those applicable to you:
owner/lessor/mortgagee/secured party] of the airframe (the "Airframe") on which the Engine is
installed.  The undersigned understands that under the laws of the country where the airframe is
registered ("Registration Country"), the laws of the country where the Lessee is certificated
("Certification Country'), and laws of other countries, (i) the mortgagee or owner of an airframe
may be deemed to have certain rights to deal with any engine installed on such airframe in order
to enforce its rights as mortgagee or owner of such airframe, (ii) liens and encumbrances on an
airframe may attach and extend to engines installed on such airframe, and/or (iii) engines
installed on an airframe may not be subject to any liens and encumbrances other than those to
which such airframe is subject.  The undersigned understands that the Engine is owned by the
Lessors and is subject to a first priority security interest in favor of Petrus Aviation Lending,
L.L.C.

      The undersigned hereby agrees and acknowledges that, notwithstanding any
provision to the contrary of the laws of the Registration Country, the Certification Country or
any other law or any agreement including, without limitation, any conditional sales, security or
lease agreement with the Lessee, the installation of the Engine on the Airframe shall not affect
title to or liens on the Engine.  The undersigned agrees that the Lessors are and shall continue to
be the owner of the Engine and the Engine is and shall continue to be subject to the liens of
Petrus Aviation Lending, L.L.C. The undersigned covenants and agrees that it shall not assert,
and hereby waives, any claim against the Lessors or Petrus Aviation Lending, L.L.C. in respect

of any right, title or interest in the Engine which is inconsistent with the agreements in this instrument. The undersigned covenants and agrees that it shall not seek to enforce any rights against the Engine under any agreement solely as a result of the Engine being installed on the Airframe. The undersigned hereby disclaims and waives any ownership interest in the Engine and any security interest in the Engine.

This Acknowledgment is entered into by the undersigned for the benefit of the Lessors and Petrus Aviation Lending, L.L.C., who shall be third party beneficiary.

This Acknowledgment shall in all respects be governed by, and construed in accordance with, the laws of the State of New York, USA, including all matters of construction, validity and performance.

This Acknowledgment is duly signed and dated as of _____ __, 200_.

_____,
a _____ corporation

By:_____

Name: _____

Title: _____

AS THE _____
[OWNER, LESSOR, MORTGAGEE, OR
SECURED PARTY]

**Appendix 6**

**CONSENT AND ACKNOWLEDGMENT**

[Date]

MK Airlines Limited

    Re:    One Pratt & Whitney Model JT9D-7R4G2 Engine Bearing Manufacturer's Serial Number 715193 (the "Engine")

Ladies and Gentlemen:

    Reference is made to the Loan and Security Agreement dated as of August  , 2007 (the "Security Agreement") among V1C-23244, LLC, a limited liability company organized under the laws of the State of Delaware ("VIC");  HBC-GSKY LLC, a limited liability company organized and existing under the laws of the State of California ("HBC"), and HWC-GSKY LLC, a limited liability company organized and existing under the laws of the State of California ("HWC" and together with V1C and HBC being hereinafter collectively referred to as the "Lessors"),  and Petrus Aviation Lending, L.L.C. (the "Secured Party").  Each of V1C, HBC and HWC  hereby notifies MK Airlines Limited [a company incorporated and existing under the laws of England (the "Lessee") that VIC, HBC and HWC have granted a security interest in and collaterally assigned and mortgaged their interest in (a) the Engine and (b) the Amended and Restated Engine Lease Agreement dated as of [         , 2007] (the "Lease") between the Lessors and Lessee.

    Capitalized terms used herein and not otherwise defined are used with the meanings ascribed thereto in the Lease.

    The Lessors hereby direct Lessee to make all payments under the Lease, including all Monthly Rent, Utilization Fees and Minimum Utilization Fees  and all other payments payable to the Lessors under the Lease from and after the date of this Notice, to the following account, unless Secured Party otherwise instructs you in writing:

            For payment of Monthly Rent and all other payments payable to Lessors under the Lease:

            JPMorgan Chase Bank, New York
            ABA 021 000 021
            A/C Petrus Aviation Lending, LLC

A/C# 737309401

The Lessee agrees as follows:

1. The Lessee acknowledges and consents to the collateral assignment of the Lease and the grant of the security interest in the Engine in favor of the Secured Party pursuant to the terms of the Security Agreement.

2. The Secured Party and its directors, officers, members, managers, shareholders and employees shall be additional insureds under the insurance required to be maintained by the Lessee in compliance with Section 18 of the Lease; (ii) the Secured Party shall be designated as the sole loss payee with respect to any insurance proceeds payable to the Lessors in accordance with the terms of the Lease, and (iii) the Secured Party and its directors, officers, members, managers, shareholders and employees shall each be an Indemnitee under Section 17 of the Lease.

3. Until such time as the Secured Party has notified the Lessee in writing that the secured Party no longer has any interest in, to or under the Lease, the Lessee will not amend or modify, or consent to the amendment or modification of, the Lease without the prior written consent of the Secured Party, which such consent not to be unreasonably withheld or delayed.

4. Any consent or waiver required to be obtained from any of the Lessors for any action to be taken by the Lessee under the Lease shall at all times require the consent of such Lessor(s) and the Secured Party, which consent shall not be unreasonably withheld or delayed, provided, that, after the Secured Party has sent Lessee a notice that an Event of Default has occurred and is continuing under and as defined in the Security Agreement and/or an Event of Default has occurred and is continuing under the Lease (an "Enforcement Notice") and until the Secured Party sends the Lessee and Lessors a notice withdrawing the Enforcement Notice, any such consent or waiver shall require only the consent of the Secured Party.

5. Until such time as the Secured Party has notified the Lessee in writing that the Secured Party no longer has any interest in, to or under the Lease, Lessee agrees to pay all Monthly Rent and Utilization Fees directly to the Secured Party.

6. Lessee acknowledges and agrees that on and after the date it receives an Enforcement Notice and until such date as a notice of withdrawal of such Enforcement Notice is received by Lessee, Lessee shall permit the Secured Party to enjoy all the rights and powers of the Lessors under the Lease.

Notwithstanding anything to the contrary herein, the Secured Party agrees that so long as no Event of Default shall have occurred and be continuing under the Lease, neither it nor any person claiming by, through or under it (including without limitation, any person providing financing or refinancing for the Aircraft) shall interfere with Lessee's rights to quietly enjoy the Engine without hindrance or disturbance by it or by any person claiming by, through or under it

and neither the Secured Party nor any other person claiming by, through or under it shall take or cause to be taken any action which is contrary to or which otherwise interferes with or disturbs such right of the Lessee to quiet and peaceful enjoyment.

Pursuant to Section 20.C of the Lease, Lessors hereby direct Lessee to affix to the Engine a nameplate or stencil or other appropriate marking bearing the inscription:

"THIS ENGINE IS OWNED BY V1C-23244 LLC, HBC-GSKY LLC AND HWC-GSKY LLC AND IS SUBJECT TO A SECURITY INTEREST IN FAVOR OF PETRUS AVIATION LENDING, L.L.C."

This Notice and Confirmation may be executed in any number of counterparts, each of which shall constitute an original and all of which, taken together, shall constitute one agreement.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK.]

Thank you for your attention to this matter.

Very truly yours,

VIC-23244, LLC


By:_____
Name: _____
Title:_____


HBC-GSKY LLC


By:_____
Name: _____
Title:_____


HWC-GSKY LLC


By:_____
Name: _____
Title:_____


Accepted and agreed to:

MK AIRLINES LIMITED


By: _____
Name: _____
Title: _____


PETRUS AVIATION LENDING, L.L.C.


By:_____
Name: _____
Title: _____

**Appendix 7**

**LEASE TERMINATION**

## LEASE TERMINATION

THIS LEASE TERMINATION (this "Agreement") is made and entered into as of _____ (the "Agreement") among V1C-23244 LLC, a limited liability company organized and existing under the laws of the State of Delaware ("V1C"), HWC-SKY LLC, a limited liability company organized and existing under the laws of the State of California ("HWC") , HBC-SKY LLC, a limited liability company organized and existing under the laws of the State of California ("HBC" and together with HWC and HBC being hereinafter collectively referred to as the "Lessors") and MK AIRLINES LIMITED, a company incorporated and existing under the laws of England (the "Lessee").

### W I T N E S S E T H :

WHEREAS, the Lessors and the Lessee are parties to that certain Amended and Restated Engine Lease Agreement, as more particularly described in Annex I attached hereto (the "Lease"), with respect to that certain Pratt & Whitney Model JT9D-7R4G2 aircraft engine bearing manufacturer's serial numbers 715193 (the "Engine");

WHEREAS, the Lessor and the Lessee desire to terminate the Lease.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Lessors and the Lessee agree as follows:

1.      The Lease is hereby terminated and the Engine is released from all of the terms and conditions thereof; provided that the provisions of the Lease that, by their respective terms,, are to survive the termination or expiration of the Lease shall survive the termination of the Lease to the extent required thereby for their full observance and performance.

2.      This Agreement may be executed in counterparts, each of which when executed and delivered shall be deemed an original and all together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first above written.

V1C 23244 LLC

By:_____
Name:
Title:


HBC-GSKY LLC

By:_____
Name:
Title:

HWC-GSKY LLC

By:_____
Name:
Title:


MK AIRLINES LIMITED

By:_____
Name:
Title:

Annex I
to Lease Termination

Description of Lease

Amended and Restated Engine Lease Agreement dated as of [                    ] among
V1C-23244 LLC, HBC-GSKY LLC and HWC-GSKY LLC ("Lessors") and MK
AIRLINES LIMITED  which was recorded by the Federal Aviation Administration on
_____ and assigned Conveyance No. _____

# EXHIBIT 2

# Engine Lease Agreement

## JT9D-7R4G2
## esn 715220

between

**MK Airlines Limited**

Hereinafter referred to as "Lessee"

And

**V1C-23244 LLC**
**HBC-GSKY LLC**
**and**
**HWC-GSKY LLC**

Hereinafter referred to as "Lessors"

This ENGINE LEASE AGREEMENT is effective the 21ST day of August, 2007 ("Lease") between:

**V1C-23244 LLC** a limited liability company organized under the laws of the State of Delaware, USA ("V1C " );

**HBC-GSKY LLC** a limited liability company organized under the laws of the State of California, USA , ( "HBC" ); and

**HWC-GSKY LLC** a limited liability company organized under the laws of the State of California, USA ("HWC") (HWC, HBC and V1C are hereinafter collectively referred to as the "Lessors");

and

**MK Airlines Limited**, a company incorporated in the United Kingdom, as lessee ("Lessee")

**Whereas** the Lessors collectively own the Engine as defined in this Lease and are willing to lease such Engine to the Lessee.

For the consideration hereinafter set out, IT IS HEREBY AGREED:

## 1.  SCOPE OF AGREEMENT:

A.  The Lessors agree to lease the following engine ("the Engine") to the Lessee and the Lessee agrees to lease the Engine from the Lessors upon the terms set out in this Agreement for a period 18 months from the effective date of this document, unless earlier terminated in writing by the parties. This Lease may be extended beyond 18 months with written agreement from both parties, such extension to be on the same terms and conditions as those detailed herein.

| | |
|---|---|
| (1) Engine: (as specified in Schedule 1) | |
| (2) Manufacturer: | Pratt & Whitney |
| (3) Model: | JT9D-7R4G2 |
| (4) Serial Number: | 715220 |
| (5) Lease Commencement Date and Delivery Date: | August  2007 |
| (6) Lease Termination Date and Redelivery Date: | the date that is 18 month anniversary of the Economic Lease Commencement Date (as defined on Schedule 4) or such later date as may be agreed by the parties pursuant to the first paragraph of this Section 1A. |

## 2.  **TERM:**

The Lease term means the time from the Lease Commencement Date to the Lease Termination Date, unless earlier terminated or extended in writing by the parties in accordance with the provisions of this Agreement ("Term").

## 3.  **PAYMENT:**

A. Lessee shall pay to V1C, as agent for the Lessors, the Monthly Rent, the Utilization Fee and Minimum Utilization Fee as described in Schedule 4 attached hereto (individually and collectively, the "Lease Fees") during the Term.

B. The Lessee shall pay to V1C, as agent for the Lessors, the Lease Fees in accordance with the Rent Due Date (as defined in Schedule 4) and Utilization Fee Due Dates (as defined in Schedule 4i) (each a "Due Date"). Lessee is responsible as well for transportation, insurance, packing charges, customs duty, (in each case, other than in connection with Delivery) and taxes, if any, arising in connection with this Lease, other than taxes set out in Section 19C.

C. All payments shall be made when due without prior demand by wire transfer to the following bank account:

> JPMorgan Chase Bank, New York
> ABA 021 000 021
> A/C Petrus Aviation Lending, LLC
> A/C# 737309401
> Ref: MK V1C ESN 71552 [715193]

or to such other account as V1C, acting as agent for the Lessors, shall (on reasonable notice) specify in writing to the Lessee.

D. If the Engine is not redelivered on the planned Lease Termination Date (as the same may have been extended in accordance with this Agreement) solely by reason of a default by Lessee, Lessee shall pay to Lessor a daily penalty fee of $1,000.00 per day (in addition to the Lease Fees) ("Daily Penalty Fee") for each day exceeding the Term.

E. If the parties agree to terminate this Lease prior to the Lease Termination Date, as provided for in Articles 1 and 2 herein, Lessors shall reimburse to Lessee Lease Fees paid by Lessee on a per diem basis so that Lessee shall only be responsible for the Lease Fees for the number of days it has possession of the Engine.

F. This Lease is a net lease and the Lessee's obligations to pay Monthly Rent, the Utilization Fee and the Minimum Utilization Fee and to make other payments and perform other obligations in accordance with this Lease shall be absolute and unconditional (except as otherwise expressly provided herein) and irrespective of any contingency whatsoever including but not limited to:

(i)    any right of set-off, counterclaim, recoupment, defense, or other right that Lessee may have in the event that any such set-off, counterclaim, recoupment, defense or other right should apply;

(ii)    any insolvency, bankruptcy, reorganization, arrangement, readjustment of debt, dissolution, liquidation or similar proceedings by or against any of the Lessors or the Lessee;

(iii)    any invalidity or unenforceability or lack of due authorization of, or other defect in, this Lease; and

(iv)    any other cause which (but for this provision) would or might have the effect of terminating or in any way affecting any obligation of the Lessee hereunder.

Notwithstanding the foregoing, Lessee shall not be required to continue to pay the Monthly Fee and the Utilization Fee if the Lease is terminated prior to the Lease Termination Date in accordance with the terms hereof; provided, however, that the termination of Lessee's obligation to pay Monthly Fee and the Utilization Fee described in this sentence shall not apply to the termination of the Lease following an Event of Default (hereinafter defined) until the Engine has been returned in the condition required by this Agreement.

The Lessors shall be jointly and severally liable for the payment of any amounts to Lessee under this Agreement.

**4.  Delivery, Delivery Condition, Lessee's Pre-service Inspection:**

A.  The Engine will be delivered to Lessee ("Delivery") in the condition required by this Agreement but otherwise "as-is, where-is" in JT9D-7R4G2 configuration following acceptance by Lessee (such acceptance to be evidenced by Lessee's execution of the Acceptance Certificate substantially in the form of Schedule 2) at Goodyear, Arizona, USA (the "Delivery Location").

B.  Lessor will provide a suitable transportation stand into which the Engine will be placed for Delivery.

C.  Lessee shall provide and place, at its sole cost and expense, an ownership plate on the Engine which includes the statement set forth in Section 20.C hereof and confirm the continued location of same on the Engine in its monthly reports, Appendix 2 attached hereto.

D.  The Engine will be delivered in neutral quick engine change kit ("QEC") configuration including major line replaceable units ("LRU") such as generator, constant speed drive

("CSD"), pneumatic starter and hydraulic pumps. Prior to Delivery, Lessee will be responsible for performing such inspections necessary for Lessee to determine the serviceability of the Engine including review of the Engine's technical records, hot and cold section video boroscope inspection and physical inspection to determine no condition of the engine is outside of the manufacture's maintenance manual limits (the "Pre-Service Inspection"). Should Lessee perform the Pre-Service Inspection and determine that the Engine is not serviceable, Lessee will return the Engine to Lessor V1C at the Delivery Location and this Lease Agreement shall terminate with no cost to Lessee.

## 5.  **Cause for Engine Removal, Lease Termination**

During the Term, the Engine may be removed from Lessee's fleet and returned to V1C for "qualifying" and "non-qualifying" causes. Causes for a qualifying removal ("Qualifying Removal") and non-qualifying removal ("Non-Qualifying Removal") are defined below. In the case of Qualifying Removals, Lessee will redeliver the Engine in accordance with the terms and conditions herein and this Lease will terminate upon Redelivery and acceptance of the Engine by Lessor at no further expense to Lessee. In the case of a Non-Qualifying Removal, Lessee will redeliver the removed Engine to V1C and will be responsible for either the expense of the Engine shop visit work required to restore the Engine to serviceability or for replacement of the Engine with an engine of similar value to the Engine replaced (based on the replaced Engine's time since last shop visit, cycles remaining to its most restrictive life limited part ("LLP") and the total market value of such Engine's installed LLP), whichever is less costly to Lessee.

A. Qualifying Engine Removal

Removal of the Engine for any of the following causes shall be considered a Qualifying Removal:

   i) The removal is necessary to correct an Engine-caused failure or is the result of performance deterioration which exceeds the Manufacturer's operations or maintenance manual limits for on-wing operation and correction of which could not have been performed on-wing as referenced in the applicable maintenance manual;

   ii) The removal is necessary to comply with imminent requirements of any alert service bulletin issued by the manufacturer of the Engine, any module or any part or any written directive issued by a party who shall from time to time be vested with the control and supervision of or have jurisdiction over the airworthiness and operation of the Engine (the "Aviation Authority") in respect of the Engine, module or part mandating a specified action or course of action within a specified period of time and, without such compliance the Engine could not be operated further;

   iii) The removal is necessary to comply with a Lessor-issued written recommendation regarding removal of the Engine;

   iv) The removal is necessary because of the imminent expiration of LLP's; or,

   v) The removal is necessary because acceptable troubleshooting by Lessee on-wing could not resolve a discrepancy which was outside of Manufacturer's maintenance

manual on-wing serviceable limits or was causing multiple operational interruptions. This case would be considered a Qualifying Removal if Lessee and Lessor (or its designated representative) are in agreement with the required maintenance could not have been reasonably accomplished on-wing or the out of service time necessary to troubleshoot and affect repairs would materially exceed that to remove and replace the Engine.

B. Non-Qualifying Removal.

Removal of the Engine for any of the following causes shall be considered a Non-Qualifying Removal, the cost for repair or replacement of which will be the responsibility of Lessee:

i)   All services not specifically included in Paragraph A. of this Article 6;

ii)  An accident while such Engine was in the care, custody and control of Lessee or any sublessee;

iii) Damage from a military action;

iv)  An act of God;

v)   Improper or negligent installation, operation or maintenance of the Engine by Lessee.

vi)  Any experimental test or troubleshooting procedure applied to the Engine which led to the Engine's operation exceeding Manufacturer's maintenance manual limits by Lessee;

vii) Use of parts or components installed by Lessee on the Engine which are not in conformance with the applicable manuals or regulations for the specific configuration or specification of the Engine;

viii) A removal required as a result of FOD (as defined below); and

ix)  A removal required as a result of Misuse or Abuse (as defined below).

C. Foreign Object Damage

Foreign Object Damage ("FOD") is impact damage to an Engine caused by an object of origin external to the Engine which requires the Engine to be removed from service due to an out of limits condition per the applicable aircraft or Engine maintenance manual.

D. Misuse or Abuse

"Misuse or Abuse" is improper operation or maintenance of an Engine outside of limits prescribed in, or otherwise not in compliance with, procedures specified in the manufacturer's Aviation Authority approved operations and maintenance manuals, as revised for or applicable to Lessee.

## 6. CONDITIONS PRECEDENT PRIOR TO DELIVERY:

The obligations of Lessors under this Lease are conditional upon Lessors' receipt, prior to the Delivery Date of the Engine of (and the parties acknowledge that documents received by one

Lessor shall be deemed to have been received by the other Lessor and the relevant condition satisfied):

A. four duly initialed and executed originals of this Lease and four duly initialed and executed copies of the Acceptance Certificate;

B. an independent insurance broker's report, in form and substance satisfactory to Lessors, describing all insurance and reinsurance then carried and maintained with respect to the Engine and the expiration date thereof, together with certificates of insurance and reinsurance in accordance with Article 16 and Schedule 3 hereof, including a written confirmation from such broker in a form reasonably satisfactory to Lessors that such insurance and reinsurance complies with the terms of Article 16 and Schedule 3 hereof;

C. Aircraft Owner/Mortgagee Acknowledgement in the form attached hereto in Appendix 5 duly executed by each of (i) HSBC and (iii) any other person or entity required to execute and deliver such acknowledgment pursuant to the terms hereof;

D. a duly executed "Consent and Acknowledgment" in favor of Lessors' lender, in the form attached hereto in Appendix 6;

E. resolutions of the management board of Lessee or other written evidence of appropriate authorizing action acceptable to Lessors, duly authorizing the lease of the Engine and the execution, delivery and performance of the Lease, together with documentation acceptable to Lessors as to the person or persons authorized to execute and deliver said documents on behalf of Lessee;

F. a favorable opinion of English counsel for Lessee, dated the Delivery Date, in form and substance satisfactory to Lessors covering such matters as Lessors may reasonably request in respect of the transactions contemplated hereby;

G. a favorable opinion of FAA counsel acceptable to Lessors, dated the Delivery Date, addressing the due filing for registration and recordation of this Lease with the FAA;

H. the Security Deposit (defined below);

I. a lease termination in the form attached hereto in Appendix 7 (the "Lease Termination") duly executed by Lessee but undated; and

J. such other documents as Lessors may reasonably request from Lessee, in form and substance satisfactory to Lessors.

### 7. Security Deposit; Lease Termination:

A. Upon execution of this Lease, Lessee will pay to V1C, as agent for the Lessors, US$75,000 (the "Security Deposit") to the account specified in Section 4(F). Lessee hereby grants to V1C, as agent for all of the Lessors, a security interest in the Security

Deposit. The Security Deposit shall secure all of Lessee's obligations under this Lease. V1C shall be allowed to commingle the Security Deposit with its general funds and any interest earned on the Security Deposit will for the Lessor's account. Upon termination of this Lease and Lessee's compliance with all of its obligations herein, the Security Deposit will be refunded to Lessee within five (5) business days of termination of this Lease. In the event the Engine is not delivered to Lessee on the Delivery Date (as the same may be extended by written agreement between the parties) for any reason other than a failure by Lessee to comply with its obligations hereunder, the Security Deposit and any other amounts paid by Lessee shall be refunded within five (5) business days of such date.

B.  The Lessee shall deliver to V1C, as agent for the Lessors, the Lease Termination. V1C shall hold the Lease Termination during the Term and shall not file the Lease Termination with the Federal Aviation Administration or any other agency unless an Event of Default (hereinafter defined) has occurred and is continuing or this Lease terminates in accordance with the terms hereof.

## 8.  DELIVERY, REDELIVERY, SHIPMENT, AND ACCEPTANCE:

A.  This Lease shall commence at Delivery.

B.  On the last day of the Term, the Engine will be redelivered (at Lessee's expense) to an airport in the continental United States of America to be agreed between Lessee and V1C ("Redelivery").

C.  Any shipment of the Engine (other than in connection with Delivery) will be at Lessee's risk and expense.

D.  Any other Redelivery Location has to be agreed upon in writing by the parties.

E.  Provided the Engine is in the condition required by this Agreement, Lessee will confirm acceptance of the Engine by executing Schedule 2 ("Acceptance Certificate") attached hereto.

## 9.  LESSEE'S COVENANTS DURING THE TERM:

A.  Operational Data

i)  During the Term and on the Lease Termination Date, the Lessee shall provide the Lessor with a written statement of the actual hours and cycles of operation of the Engine in the prior month (see Appendix 2). Such statement during the Term shall be provided not later than the tenth (10th) business day of every following month.

B.  Engine Handling

i)  The Lessee shall operate the Engine in accordance with the manufacturer's and the Aviation Authority (or other applicable regulatory authority's) approved operation and maintenance manuals and Lessee's approve additional maintenance and

operations requirements, if any. No changes to the modification status of the Engine are allowed unless agreed to by Lessor.

C. Line Maintenance

i) Line Maintenance shall mean the performance and cost of normal routine and non-routine on wing maintenance, and unless any inspection, overhaul, maintenance, service or repair shall result from FOD or other casualty or damage, or misapplication of approved procedures as provided for in the Lessee's Aviation Authority approved maintenance program above, shall only include pre-flight inspection, fluid servicing, inspection, maintenance and repair of QEC components, engine accessories, and line replaceable units. Lessee is responsible for all Line Maintenance during the Term. Any costs arising in connection with Line Maintenance will be born by the Lessee.

D. Parts Exchange

i) In case of necessary parts exchange on the Engine, the Lessee will exchange the removed part with a serviceable part from its own stock, with complete traceability and repair history, and of equal or greater value or status and each month will report any such exchange to Lessor on its monthly report, Appendix 2 attached hereto.

E. Property

i) Lessee will clearly mark the Engine as Lessor's property in accordance with Section 4.C, at Lessee's expense.


**10. [INTENTIONALLY OMITTED]**


**11. <u>REMOVAL/REDELIVERY:</u>**

A. At the end of the Term or upon the Engine becoming unserviceable, Lessee will promptly remove the Engine, preserve the Engine in accordance with approved maintenance manuals and return the Engine to the Delivery Location in the configuration in which it was delivered.

B. Documentation [*MK – Are these all practicable?*]

Not later than 5 days after removal of the Engine at the end of the Term, the Lessee shall provide the following documentation:

i) Shipping Documents giving reference to this Lease;

ii) "Lease Engine Redelivery Sheet" Including the registration number of the aircraft and the position the leased Engine was installed on and the number of flight hours and flight cycles, the Engine was operated by the Lessee (please see Appendix 1);

iii) A statement indicating the serviceability status of the Engine at removal from the Lessee's aircraft;

iv) Any available power assurance data and engine condition monitoring data (ECM) including take-off readings throughout the Term;

    v)  A written statement that the Engine was operated in accordance with the Engine's manufacturer's rules and recommendations during the Term (please see Appendix 4);

    vi) A written "Non Incident" Statement (please see Appendix 3);

    vii) Missing Parts/Shipped Loose List.

## 12. LEASE RETURN INSPECTION / RETURN CONFIGURATION / "OFF WING" MAINTENANCE

  A.  Any "off wing" maintenance must be performed or arranged by Lessor only. In case "off wing" maintenance is required during the Term the obligation to pay lease charges continues except in the case of a Qualifying Removal.

  B.  The Engine shall be returned in the configuration in which it was delivered, fair wear and tear accepted

  C.  The Lease Return Inspection will include a full video boroscope. Should the Engine be removed for a Qualifying Removal and FOD be discovered during such Lease Return Inspection boroscope procedure, Lessee shall be responsible for the repair of such FOD, only.

## 13. LEASE TERMINATION

  A.  The actual Term will end on the Lease Termination Date, subject to any extension in accordance with Clause 1A, when the Engine is returned and accepted by Lessor. Such termination will be evidenced by completion of the Lease Return Inspection and the Engine being accepted by Lessor and the open items on the "Lease Engine Redelivery Sheet" being corrected to Lessor's satisfaction (acting reasonably).

  B.  If, for any reason, the Lessee is unable to return the Engine to the Lessor within the agreed upon Term, the Lessee shall in writing request the consent of the Lessor for extension of the Lease at least 3 days in advance of expiration of the Term.

## 14. EVENT OF DEFAULT

  A.  It is a fundamental term and condition of this Lease that none of the following events or circumstances shall occur during the Term and that the occurrence of any of them shall constitute a material breach and repudiation by Lessee of this Lease (each an "Event of Default"):

    (i)    Lessee fails to pay any sum payable by it under this Lease within three Business Days of the due date or, in the case of sums payable on demand, within three Business Days of demand being made in the manner required by this Lease; or

    (ii)   Lessee breaches any of its obligations or covenants under this Lease and, in respect of any such breach which is capable of remedy, such remedial action as Lessors may require shall not have been taken within five business days from the date upon which any Lessor notifies Lessee of such default and of the remedial action which the Lessors require Lessee to undertake; or

(iii)   any representation or warranty made or deemed to be repeated by Lessee is incorrect in any material respect which has a material adverse effect on the ability of the Lessee to perform its obligations hereunder; or

(iv)   a creditor takes enforcement action against any of the Lessee's assets which is not discharged within seven days; or

(v)   Lessee suspends or is unable to pay any of its debts as they fall due or commences negotiations with one or more of its creditors with a view to the general readjustment or rescheduling of all or part of its indebtedness or proposes any composition or other arrangement for the benefit of its creditors generally or any class of its creditors or proceedings are commenced in relation to any such reconstruction or re-adjustment of debts; or

(vi)   Lessee or any creditor takes any steps for (i) Lessee to be adjudicated insolvent or wound up, (ii) the appointment of a liquidator, trustee, receiver, examiner, administrator or similar officer to or in respect of Lessee or the whole or any part of its undertaking, assets, rights or revenues, or (iii) the judicial or court protection of Lessee from its creditors; or

(vii)   Lessee threatens to suspend or cease to carry on its business; or

(viii)   all or a material part of the undertakings, assets, rights or revenues of Lessee are seized, nationalized, expropriated or compulsorily acquired by or under the authority of any government; or

(ix)   Lessee threatens to dispose of all or a material part of its assets, whether by one or a series of transactions, related or not, other than for the purpose of a solvent reconstruction or amalgamation the terms of which have received the previous consent of Lessor (not to be unreasonably withheld or delayed); or

(x)   the Engine suffers any material repairable damage and Lessee fails to commence the repair of such damage within 30 days from the date upon which such damage occurred and/or thereafter by a deliberate act or omission frustrates or delays completion of such repair; or

(xi)   Lessee shall dispose of or sell the Engine or create or suffer to exist any mortgage, charge (whether fixed or floating), pledge, lien, hypothecation, assignment, security interest, title retention or other encumbrance of any kind other than Permitted Liens securing, or any right conferring a priority of payment in respect of, any obligation of any party ("Encumbrances") over the Engine or challenge the ownership and title of Lessor to the Engine; or

(xiii)  if for any reason whatsoever any Insurances with respect to the Engine and the transactions contemplated by this Agreement which may have been required are cancelled or not renewed upon terms and conditions satisfactory to Lessor (acting reasonably).

For the purposes of this Clause, **"Permitted Lien"** means:

(a)  any Encumbrance in respect of taxes not assessed or, if assessed, not yet due and payable, or being contested in good faith by appropriate proceedings;

(b)  any Encumbrance of a repairer, mechanic, carrier, hangarkeeper, airport, air navigation authority or other similar lien arising in the ordinary course of business, by operation of law in respect of obligations which are not overdue or are being contested in good faith by appropriate proceedings;

(c)  any Encumbrance created by or through Lessor,

(d)  Encumbrances arising out of judgements or awards against Lessee with respect to which, at the time an appeal or proceeding for review is being prosecuted in good faith and for which a stay of execution has been granted.

B.  If an Event of Default occurs and is continuing, Lessor may at its option, at any time:

(i)  by notice to Lessee (hereinafter a "Termination Notice") accept such repudiatory breach by Lessee and immediately terminate the Lease whereupon Lessee's right to possess and operate the Engine pursuant to the terms of the Lease, shall terminate; and/or

(ii)  subject to any mandatory provisions of law in the jurisdiction in which the Engine is at such time located:

(a)  take possession of the Engine, and Lessee agrees that Lessor may for this purpose enter upon any premises where the Engine may be located, and Lessor shall be entitled to act and is hereby constituted as attorney for Lessee in effecting such repossession and in carrying out all acts and executing all documents to effect such repossession and transportation to a location acceptable to Lessor, or

(b)  request Lessee to redeliver the Engine to the airport Lessor may in its absolute discretion nominate or direct that the Engine remain at the location where, at the time of issuing a Termination Notice, it is based without further use or operation; and/or

(iii)   require Lessee to take all steps necessary to effect the export of the Engine from the jurisdiction where it is for the time being situated and to enable the Engine to be redelivered to Lessor in the redelivery condition as set forth in Section 11 to this Lease. Following termination of the Lease, Lessor shall be free to lease, sell or otherwise dispose of the Engine as it may in its absolute discretion think fit; and/or

(iv)   revoke or vary any Termination Notice, provided that any such revocation or variation shall not prevent Lessor from subsequently issuing any further Termination Notice in relation to either any event occurring prior to upon or subsequent to the date of the revocation or variation of the original Termination Notice; and/or

(v)    retain the Security Deposit and apply such amount to any amounts due and owing to the Lessors under this Lease; and/or

(vi)   file the Lease Termination with the FAA or any other agency.

**PROVIDED** that nothing herein shall qualify Lessors' obligation to mitigate their Losses.

## 15. SUBLEASING

The Lessee will not at any time sublease the Engine to any third party without the prior written consent of the Lessor.

## 16. ASSIGNMENT:

A. The Lessee may not assign or transfer any of its rights or obligations hereunder without the prior written consent of the Lessor. The Lessor may assign all or any of its rights under this Lease, provided such assignment does not materially increase the obligations or decrease the rights of Lessee.

B. The Lessee's rights will be solely those of a Lessee and nothing contained herein is intended or will be interpreted as granting to the Lessee any other right, title, interest in or to the Engine, whether legal or equitable.

## 17. LIABILITY / INDEMNIFICATION

A. The Lessee will indemnify and hold harmless (i) V1C, (ii) HWC, (iii) HBC, (iv) Petrus Aviation Lending, LLC, any lender that provides or has provided financing to any or all of the Lessors and which has been granted a security interest in the Engine (a "Lessor Lender") and (v) their respective directors, officers, managers, employees, members, shareholders, agents and subcontractors (collectively, the "Indemnitees" and each

individually, an "Indemnitee") from and against any and all liabilities, claims, penalties, fines, liens, demands, suits, damages and losses (including without limitation all reasonable attorney's fees, costs and expenses in connection therewith or incident thereto), including without limitation for deaths of or injuries to any persons whomsoever (including without limitation the Lessee's employees), for loss of or damage to or delay in the delivery of any property whatsoever (including without limitation any aircraft on which the Engine may be installed and loss of use thereof), in any manner arising out of or in any way connected with the condition, delivery, ownership (including warranty, product liability and strict liability in tort by virtue of ownership) leasing, storage, transporting, installation, operation, maintenance or use of the Engine while under the care and custody of the Lessee during the Term, or the attachment or detachment of any equipment in connection with the delivery or redelivery of the Engine hereunder unless such damage, loss, injury or death is caused by the gross negligence or the willful misconduct of any of the Indemnitees.

C.  V1C, HBC and HWC will indemnify and hold harmless the Lessee, its directors, officers, employees, agents and subcontractors from and against any and all liabilities, claims, penalties, fines, liens, demands, suits, damages and losses (including without limitation all reasonable attorney's fees, costs and expenses in connection therewith or incident thereto), including without limitation for deaths of or injuries to any persons whomsoever (including without limitation the Lessors' employees), for loss of or damage to or delay in the delivery of any property whatsoever (including without limitation any aircraft on which the Engine may be installed and loss of use thereof), in any manner arising out of or in any way connected with the condition, delivery, ownership (including warranty, product liability and strict liability in tort by virtue of ownership) leasing, storage, transporting, installation, operation, maintenance or use of the Engine while under the care and custody of any of the Lessors prior to the commencement of the Term, unless such damage, loss, injury or death is caused by the gross negligence or the willful misconduct of the Lessee.

## 18. INSURANCE

A.  As and from Delivery and throughout the Term the Lessee shall, while the Engine is installed upon an aircraft operated by Lessee; procure or cause to be procured compliance with and maintain in full force and effect the insurances satisfactory to the Lessor which shall be paid for by the Lessee and shall comply with the provisions of Schedule 3 ("Insurances") and shall furnish the Lessor with such documentation as the Lessors may require to evidence such Insurances. While the Engine is retained as a spare, the Lessee shall insure the Engine under a spares insurance policy, which shall include but not be limited to transportation coverage in a form and on terms and conditions completely acceptable to the Lessor. The Lessor's requirements are set out in Schedule 3.

B.  Lessee shall, within 72 hours of the occurrence of any damage to the Engine not constituting an Event of Loss that Lessee is obligated to repair, notify Lessor and

Lessor's Lender of such damage and include in such notice the identity of the repair facility and workscope Lessee shall use for such repair. Lessor and Lessor's Lender shall, within 72 hours of their receipt of such notice, notify Lessee if such facility and workscope are acceptable and, if acceptable, will instruct the insurer to apply insurance proceeds of such damage to the payment (or to reimburse Lessee) for repairs or replacement upon Lessor and Lessor's Lender being satisfied that the repairs or replacement have been effected in accordance with this Lease.

## 19. TAXES

A. All amounts receivable by Lessors under this Lease are stated herein exclusive of any and all forms of taxation, levy, impost, duty, or charge or fee of similar nature and whether imposed by a government entity and, shall include, without limitation, any value added, sales, turnover, trade profits, stamp duty, documentary, registration, withholding, retention and other such taxes together with all surcharges, fines, penalties, costs, charges and expenses payable in connection with any failure to pay or delay in paying any taxes ("Taxes") payable in respect thereof and shall be made gross, free of any rights of counterclaim or set-off and without any deductions or withholdings of any nature.

B. Lessee shall be responsible and shall indemnify each of the Lessors for payment of the following Taxes:

    (i)    all Taxes assessed and payable in Lessee's country of incorporation and, if different, its country of tax residence ("Lessee's Country") in connection howsoever with this Lease;

    (ii)    all Taxes assessed and payable outside Lessee's Country resulting from the delivery, use, possession, operation, return, storage, maintenance, protection, import or export of the Engine prior to the end of the Term relating to the affected Engine;

    (iii)    all Taxes assessed and payable outside Lessee's Country on the income, profits or gains of Lessee;

    (iv)    all Taxes resulting from any Encumbrances; and

    (v)    all Taxes imposed on any indemnity payments due from Lessee to any Indemnitee pursuant to this Lease.

C. Lessors shall be responsible for payment of all Taxes:

(i)  which are not included in Section 19.C and which are assessed and payable outside Lessee's Country on any Lessor resulting solely and directly from such Lessor's ownership of the Engine;

(ii)  to the extent imposed as a result of any connection between any Lessor and the jurisdiction imposing the Tax that is unrelated to the transactions contemplated by this Lease; or

(iii)  imposed with respect to any period prior to the Delivery Date; or

(iv)  imposed by any Government Entity on or as the result of the sale, transfer, assignment (whether legal or equitable) or other disposition by any Lessor of any of its rights with respect to the Engine; or

(v)  to the extent imposed as a result of the gross negligence or willful misconduct of any Lessor or as a result of the breach by any Lessor of any of its obligations under this Lease.

D.  If Lessee is required by law in any relevant jurisdiction to make any deduction or withholding from any payment hereunder, it shall (i) promptly notify Lessors of such requirement (ii) do so in full and on time and (iii) to the extent to which Lessee is responsible for the payment of such deduction or withholding, the sum due from Lessee in respect of such payment shall be increased to the extent necessary to ensure that, after such deduction or withholding, Lessors receive and retain (free of any liability) a net sum equal to the sum they would have received and retained had no deduction or withholding been required.

E.  If gross payments are prevented by law, Lessee shall indemnify each of the Lessors against all consequential Losses incurred by any such Lessor through its receipt of a sum less than the full amount due from Lessee hereunder. The amount for which Lessee is obliged to indemnify the Lessors shall be no greater than the amount of the deduction or withholding.

## 20. TITLE TO ENGINE

A.  Title to the Engine shall remain at all times vested in Lessors and shall not accede to any airframe or aircraft upon which the Engine may be installed. Lessee will not permit any lien, claim, mortgage, or encumbrance except those liens arising by or through Lessors, to attach to the Engine.

B.  Lessee shall not permit the Engine to be installed on any airframe without V1C's prior written consent. If V1C consents to the installation of any Engine on any airframe, Lessee shall not install such Engine on such airframe unless Lessee obtains from any third party that has an ownership, security, lien or leasehold interest in such airframe a written signed acknowledgment from such third party in the form attached hereto as

Appendix 5 that neither it nor its successors and assigns will acquire or claim any right, title, or lien on the Engine.

C. Lessee's rights with respect to the Engine are solely those of a lessee and nothing contained herein is intended or will be interpreted as granting to Lessee any other right, title, or interest in or to the Engine, whether legal or equitable. Lessee hereby waives any right to title to any of the Engine. Lessee will affix to the Engine a placard which is clearly visible and which reads:

> "THIS ENGINE IS OWNED BY V1C-23244 LLC, HBC-GSKY LLC
> AND HWC-GSKY LLC AND IS SUBJECT TO A SECURITY
> INTEREST IN FAVOR OF PETRUS AVIATION LENDING, L.L.C."

and Lessee will assure that such placard remains attached to the Engine throughout the Term.

## 21. QUIET ENJOYMENT

Each of the Lessors covenants and agrees that, provided no Event of Default has occurred and is continuing, none of Lessors nor any person claiming by or through any of the Lessors shall interfere with the quiet use, possession and enjoyment of the Engine by Lessee during the Lease Term.

## 22. CONFIDENTIALITY:

A. Each party hereto (except with the prior written consent of the other party) agrees:

    (i)     not to disclose details of this Lease to any third parties other than its financial and legal advisers, its lenders and/or as required by governmental regulations; and,

    (ii)     to maintain confidentiality of all information exchanged between the parties, including pricing information and other proprietary knowledge, and not to use such for the benefit of any third party.

    (iii)     such confidentiality shall survive for a period of two years following the expiration or earlier termination of this Agreement.

## 23. LAW AND JURISDICTION

A. This agreement and any legal matters that may arise out of or in connection with this agreement will be subject and construed in accordance with the laws of the state of New York, United States of America without giving effect to the conflict of laws provisions thereof (other than Sections 5-1401 and 5-1402 of Title 14 of Article 5 of the General Obligations Law of the State of New York).

B. EACH OF LESSORS AND LESSEE IRREVOCABLY AGREES THAT ANY LEGAL SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING SOLELY TO THIS LEASE OR THE TRANSACTIONS CONTEMPLATED HEREBY SHALL BE INSTITUTED IN THE STATE OR FEDERAL COURTS IN THE BOROUGH OF MANHATTAN, CITY OF NEW YORK, STATE OF NEW YORK, AND IT HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH IT MAY HAVE NOW OR HEREAFTER TO THE LAYING OF THE VENUE OR THE JURISDICTION OR THE CONVENIENCE OF THE FORUM OF ANY SUCH LEGAL SUIT, ACTION OR PROCEEDING AND IRREVOCABLY SUBMITS GENERALLY AND UNCONDITIONALLY TO THE JURISDICTION OF ANY SUCH COURT BUT ONLY IN ANY SUCH SUIT, ACTION OR PROCEEDING. EACH OF SELLER AND PURCHASER FURTHER IRREVOCABLY AGREES TO THE SERVICE OF PROCESS OF ANY OF THE AFOREMENTIONED COURTS BUT ONLY IN ANY SUIT, ACTION OR PROCEEDING OF THE NATURE REFERRED TO ABOVE BY THE MAILING OF THE COPIES THEREOF BY CERTIFIED MAIL, POSTAGE PREPAID, RETURN RECEIPT REQUESTED, TO IT AT ITS ADDRESS SPECIFIED HEREIN, SUCH SERVICE TO BE EFFECTIVE UPON THE DATE OF RECEIPT INDICATED ON THE POSTAL RECEIPT RETURNED FROM IT.

C. Waiver of Jury Trial.   THE LESSEE AND THE LESSORS HEREBY WAIVE TRIAL BY JURY IN ANY JUDICIAL PROCEEDING TO WHICH THEY ARE PARTIES INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER ARISING OUT OF OR RELATING TO THIS LEASE.

**24. DISCLAIMER:**

NONE OF THE LESSORS SHALL HAVE MADE NOR SHALL BE DEEMED TO HAVE MADE OR TO MAKE ANY WARRANTIES, REPRESENTATIONS OR GUARANTEES OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY WARRANTIES REPRESENTATIONS OR GUARANTEES OF THE FOLLOWING: (I) THE AIRWORTHINESS, VALUE, CONDITION, DESIGN, COMPLIANCE WITH SPECIFICATIONS, DURABILITY OR OPERATION OF, OR QUALITY OF THE MATERIAL OR WORKMANSHIP IN, OR ABSENCE OF ANY DEFECTS (INCLUDING BUT NOT LIMITED TO ANY LATENT DEFECTS), WHETHER OR NOT DISCOVERABLE, OR ANY DEFECT IN, THE ENGINE, ANY PART, ANY RECORDS RELATED THERETO, OR ANY OTHER THING DELIVERED, LEASED OR TRANSFERRED HEREUNDER, AND (II) **ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR USE OR FOR A PARTICULAR PURPOSE OF THE ENGINE, ANY PART, ANY RECORDS RELATING TO THE  ENGINE, OR ANY OTHER THING DELIVERED, LEASED OR TRANSFERRED HEREUNDER.** NONE OF THE LESSORS SHALL HAVE ANY OBLIGATIONS OR LIABILITIES WITH RESPECT TO (A) ANY ACTUAL OR ALLEGED INFRINGEMENT OF ANY PATENT, TRADEMARK OR COPYRIGHT OR THE LIKE, OR ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE, (B) ANY RIGHT,

CLAIM OR REMEDY IN TORT WITH RESPECT TO THE ENGINE, ANY PART THEROF, ANY RECORDS RELATING TO THE ENGINE, ANY OTHER ITEM OR ANY OTHER THING DELIVERED, LEASED OR TRANSFERRED HEREUNDER, WHETHER OR NOT IN STRICT OR ABSOLUTE LIABILITY OR ARISING FROM THE NEGLIGENCE OF ANY LESSOR, ACTUAL OR IMPUTED (INCLUDING, WITHOUT LIMITATION, ANY STATUTORY WARRANTY OR CONDITION UNDER THE LAWS OF THE STATE OF NEW YORK), OR (C) ANY RIGHT, CLAIM OR REMEDY FOR LOSS OF, OR DAMAGE TO, THE ENGINE, ANY PART, ANY RECORDS RELATED THERETO, OR ANY OTHER THING, FOR ANY LOSS OF USE, REVENUE OR PROFIT, OR ANY OTHER DIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES. LESSEE HEREBY WAIVES ANY RIGHTS OR CLAIMS AGAINST LESSOR WITH RESPECT TO ANY OF THE FOREGOING SPECIFIED IN THE TWO IMMEDIATELY PRECEDING SENTENCES AND ALL RISKS OF ANY NATURE INCIDENT THERETO ARE TO BE BORNE BY LESSEE. LESSORS LEASE THE ENGINE HEREUNDER "AS IS," "WHERE IS" AND WITH ALL FAULTS AND DEFECTS, IF ANY.

## 25. <u>EVENT OF LOSS:</u>

Upon the occurrence of an Event of Loss (hereinafter defined) with respect to the Engine: (i) Lessee will immediately notify Lessors thereof and (ii) Lessee will pay to Lessors or Petrus Aviation Lending, LLC as their interests appear on the earlier of (a) the date the insurers distribute the insurance proceeds for such Event of Loss or (ii) sixty (60) days after the occurrence of such Event of Loss, an amount equal to Agreed Value (as such term is defined in Schedule 4 attached hereto), together with all payments of Basic Rent through the date the Lessors receive the Agreed Value. Upon receipt by Lessors or Petrus Aviation Lending, LLC of the amounts specified in the immediately preceding sentence, this Lease will terminate and Lessors shall transfer all of their respective right, title and interest in and to the Engine to the Lessee, subject to the rights of any affected insurance company. For purposes of this Lease, the term "Event of Loss" means: (A) the total loss or destruction of the Engine or damage to the Engine to an extent determined in good faith by VIC to render repair impracticable or uneconomical; (B) the loss of the Engine or its being permanently rendered unfit for use for any reason whatsoever; or (C) the confiscation, theft, disappearance or seizure of, or requisition of title to or use of the Engine continuing for longer than a period which ends as of the earlier of (I) the expiration of sixty (60) days after such confiscation, theft, disappearance, seizure or requisition or (II) the receipt of insurance or other proceed with respect thereto.

## 26. <u>REPRESENTATIONS:</u>

The Lessee, for the benefit of the Lessors, makes the representations, warranties and covenants set forth on Schedule 5.

## 27. <u>NOTICES:</u>

Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, telegraphed, telexed, sent by facsimile transmission or sent by certified or registered mail postage prepaid or by an international courier service. If such notice or other communication is telegraphed, telexed or sent by facsimile transmission, it shall promptly be confirmed by mail as set forth above. Any such notice shall be deemed given when so delivered personally, telegraphed, telexed or sent by facsimile transmission or, if mailed, three business days after the date of deposit in the United States mail, or if sent by international courier, on the date such courier confirms delivery of the package. All notices or other communication to a party hereunder shall be sent to the address for such party specified on Schedule 6 attached hereto.

## 28. <u>COUNTERPARTS</u>

This Lease may be executed in any number of counterparts each of which shall be an original and all such counterparts taken together shall be deemed to constitute one and the same agreement.

## 29. <u>FURTHER ASSURANCES</u>

Lessee undertakes to execute, sign, perfect, do and (if required) register every such further document as in any of the Lessor's reasonable opinion may be necessary or desirable to carry out more effectively the intent and purpose of any Lease and/or as may be required by any applicable law and to establish, protect and maintain any of the Lessor's rights and remedies created or intended to be created thereunder, including without limitation an assignment of insurances and an assignment of lease to be filed with the Companies House within the United Kingdom.

\*       \*       \*

**SCHEDULE 1**

**DESCRIPTION OF ENGINE**

1.   Description:

Engine Manufacturer:          Pratt & Whitney
Engine Model:                 JT9D-7R4G2
Engine Serial No:             715220
QEC Status:                   Neutral
Transportation Stand: provided: One

2.   Condition:
The Engine shall be in the condition noted in the documents, copies of which have or
were delivered to the Lessee on or before delivery;

**SCHEDULE 2**

**ACCEPTANCE CERTIFICATE**

1. MK Airlines Limited (the "Lessee") hereby acknowledges that on _____ the Lessee has possession of a JT9D-7R4G2 engine bearing serial number 715220 (the "Engine") and that pursuant to the terms of the Engine Lease Agreement dated _____ (the "Lease") made between V1C-23244 LLC, HWC-GSKY LLC and HBC-GSKY LLC (collectively, the "Lessors") and the Lessee, the Term therein referred to commences on the Lease Commencement Date and the Lessee further acknowledges that henceforth the Engine shall be subject to all the terms and conditions contained in the Lease.

2. The Lessee confirms that it has accepted delivery of the Engine and after inspection and that it conforms with the specification set out in Schedule 1 of the Lease including without limitation the documents and information referred to in paragraph 2 of Schedule 1 to the Lease, copies of which are appended hereto.

Dated this ___ day of _____ 2007.

Signed by: _____

Name: _____

Title: _____

## SCHEDULE 3

## INSURANCE

1.  The Lessee will procure and maintain in full force and effect to procure and maintain in full force and effect at all times during the term of this Lease policies of insurance of the type and in the minimum amounts stated below and with companies acceptable to the Lessors under terms reasonably satisfactory to the Lessors:

2.  **Liability**: COMPREHENSIVE AIRLINE LIABILITY, THIRD PARTY, PASSENGER, BAGGAGE, CARGO, AIRLINE GENERAL THIRD PARTY LEGAL LIABILITY, PERSONAL INJURY, PRODUCT LIABILITY, WAR RISKS LIABILITY COVERAGE AND CONTRACTUAL LIABILITY COVERAGE for a combined single limit (bodily injury/property damage) of 500,000,000 USD in respect of any one accident/occurrence naming each of V1C, HBC, HWC, each Lessor's Lender, and their respective directors, officers, managers, employees and members, as additional insureds (collectively, the "Additional Insureds") . Such policy will expressly cover the obligations assumed by the Lessee in Article 14 of the Lease.

(a) **Hull**:   HULL ALL RISKS INSURANCE for loss or damage whilst flying and on the ground (including the Engine while attached to an airframe or removed and not replaced and including the Engine Technical Records in possession of Lessee and Spares Insurance (including transit) while the Engine is not attached to an airframe) for the Agreed Value as stated on page 2, article 1 of this Lease.

While attached to an airframe, the agreed value of the airframe has to be automatically increased by the Agreed Value of the Engine

HULL WAR AND ALLIED RISKS INSURANCE including hijacking and confiscation and other risks presently excluded by AVN48 (B), and including confiscation by the government of the state of registration, for the Agreed Value as stated on page 2, article 1 of this Lease (to include cover for the Engine Technical Records and Spares coverage (including while in storage or transit) while the Engine is not attached to an Airframe).

Such policies shall confirm a waiver of subrogation in favor of each of the Additional Insureds.

(b) **Spares**: ALL RISK SPARES INSURANCE, INCLUDING IN TRANSIT COVERAGE, on the Engine covering any damage, which may occur while in Lessee's care, custody, and control but not then attached to an aircraft in a minimum amount not less than the Agreed Value as stated on page 2, article 1 of this Lease for such Equipment. Such policy shall confirm a waiver of subrogation in favor of each of the Additional Insureds and shall the Lessor's Lender as sole loss payee.

3.  **AVN 678**: All insurance coverage listed in Section 1 shall be in accordance with AVN 67B.

4.  **Subrogation**: All policies will provide that all insurance carriers, including the hull insurance carrier for the aircraft on which any Engine may be installed, waive any and all

rights of subrogation that such carriers may or could have against the Additional Insureds by virtue of such insurance contracts.

5. **Deductibles:** Any deductibles in the insurance coverage described in Section 1 are the sole responsibility of the Lessee and will be paid to the designated loss payee of such insurance.

6. **Breach Warranties:** All of the policies of insurance required of the Lessee will include breach of warranty protection in favor of insureds.

7. **Primary:** All Insurances provided under this Agreement shall be primary and without any right of contribution from any other insurance which may be available to the Additional Insured.

8. **Notice of Cancellation:** All policies will provide that Insureds will be given thirty (30) days prior written notice by the insurers of policy cancellation or material change thereof except for the war risk coverages which will require seven (7) days prior written notice.

9. **Insurance certificates:** The Lessee will provide V1C with certificates of insurance naming the Lessor's Lender as sole loss payee.

10. **Losses:** All losses will be adjusted with Insureds.

11. **Other:** All policies required hereunder will include a. a severability of interest clause, b. waiver of set-off or counterclaim c. recognition that Insureds' right to pay premiums is not an obligation to pay premiums, and d. a 50/50 provisional claims settlement clause.

12. **Sub-lease:** In case of any Sublease (approved by the Lessor) the Lessee shall cause any Sub-Lessee to procure and maintain in full force and effect at all times during the term of the respective Sublease policies of insurance of the type and in the minimum amounts stated in 1-11 above.

## SCHEDULE 4

## FINANCIAL TERMS

**Monthly Rent**   US$20,000.00 for each month (the "Monthly Rent") of the Rent Term (defined below) will be paid in advance by Lessee to V1C, acting as agent for the Lessors, on the first business day of each calendar month during the Rent Term and the prorated Monthly Rent of US$666.67 per day will be paid in advance on the first day of the Rent Term for the first partial month of the Rent Term and the prorated Monthly Rent for the partial month at the end of the Term shall be paid on the first business day of such partial month as well as for the last partial month of the Term (each a "Rent Due Date").

**Utilization Fee**   US$250.00 for each flight hour the Engine is operated in that month (the "Utilization Fee") will be paid by Lessee to VIC, acting as agent for the Lessors, within ten (10) calendar days following the last day of each calendar month of the Rent Term (the "Utilization Fee Due Date"). Lessee shall pay for a minimum utilization of two hundred twenty five (225) Engine flight hours for each whole month of the Rent Term (US$56,250), or seven and one half (7.5) Engine Flight Hours per day for any partial month of the Rent Term (the "Minimum Utilization Fee").

**Rent Term**   means the period (a) commencing on the date (the "Lease Economic Commencement Date") that is the earlier of (i) the date that is thirtieth day after the Lease Commencement Date or (ii) the date occurring after the Lease Commencement Date on which the Engine is installed on an airframe that is owned or leased by Lessee and (b) ending on the Lease Termination Date.

**Agreed Value**   US$2,000,000.00.

## SCHEDULE 5   REPRESENTATIONS AND WARRANTIES

Lessee represents, warrants and covenants that:

(a)     Lessee (i) is a company incorporated and existing under the laws of England and (ii) has the corporate power to carry on its business as it is currently being conducted, to enter into and consummate the transactions contemplated by this Lease and (iii) to perform its obligations thereunder;

(b)     the execution, delivery and performance of this Lease have been duly authorized by all necessary corporate action on the part of Lessee and no action has been taken or resolution passed that is contrary to such authorization;

(c)     this Lease constitutes the legal, valid and binding obligations of Lessee;

(d)     each consent required by Lessee to authorize, or required by it in connection with the execution, delivery, performance, legality, validity or enforceability of this Lease and the transactions contemplated hereunder has been obtained and is in full force and effect, and there is no default in the observance or performance of any of the conditions and restrictions (if any) imposed on or in connection therewith;

(e)     the execution, delivery and performance by Lessee of this Lease and the performance by Lessee of its obligations hereunder will not (i) conflict with, or result in any material breach of, any of the terms of, or constitute a default under, any agreement or document to which it is a party or by which it or any of its property or assets may be bound; (ii) contravene or conflict with the provisions of its constitutive documents; or (iii) conflict with any laws binding on Lessee;

(f)     all authorizations, consents, registrations and notifications required in connection with the execution and delivery of this Lease by the Lessee and the performance of the obligations of the Lessee hereunder have been obtained and are in full force and effect;

(g)     no litigation, arbitration or administrative proceedings are pending or, to the knowledge of Lessee, threatened against Lessee which, if adversely determined, would have a material adverse effect upon the Lessee's financial condition or business or on its ability to perform its obligations under this Lease and no action has been taken or resolution passed that is contrary to such authorizations, consents, registrations or notifications;

(h)     Lessee will comply in all respects with all laws, ordinances, rules, regulations and orders of all governmental authorities, applicable to the Lessee and the installation, operation, and maintenance of the Engine.

**SCHEDULE 6   ADDRESSES**

| | | |
|---|---|---|
| **If to Lessee:** | **MK Airlines Limited** | Tel:    +44 1892 770011 |
| | Landhurst | |
| | Hartfield | |
| | East Sussex | |
| | TN7 4DH | |
| | England | |
| | Attn;  Mike Kruger | Fax: +44 1892 770022 |

| | | |
|---|---|---|
| **If to Lessors:** | **V1C-23244 LLC** | Tel:  415 296-5272 |
| | c/o Vx Holdings | Fax:  415 296-5260 |
| | 915 Front Street | |
| | San Francisco, CA 94111 | |
| | Attn: William B. Hudson | |
| | | |
| | **HBC-GSKY LLC** | Tel:  415 296-5272 |
| | c/o Vx Holdings | Fax:  415 296-5260 |
| | 915 Front Street | |
| | San Francisco, CA 94111 | |
| | Attn: Robert Brown | |
| | | |
| | **HWC-GSKY LLC** | Tel:  415 296-5272 |
| | c/o Vx Holdings | Fax:  415 296-5260 |
| | 915 Front Street | |
| | San Francisco, CA 94111 | |
| | Attn: William Hudson | |

| | | |
|---|---|---|
| **With copies to:** | **V1C-23244 LLC** | Tel:  415 296-5272 |
| | c/o Vx Holdings | Fax:  415 296-5260 |
| | 915 Front Street | |
| | San Francisco, CA 94111 | Tel:    415 296-5255 |
| | Attn: Gary Lew | Fax:    415 296-5260 |

IN WITNESS WHEREOF, the undersigned have entered into this Engine Lease Agreement on and as of the date first set forth above.

LESSEE:

**MK AIRLINES LIMITED**

By: _____
Name: _____M. Kruger._____
Title: _____Director._____

LESSORS:

**V1C-23244 LLC**
**By:  Vx Capital Partners LLC**

By: _____
Name: _____
Title: _____

**HBC-GSKY LLC**

By: _____
Name: _____
Title: _____

**HWC-GSKY LLC**

By: _____
Name: _____
Title: _____

**IN WITNESS WHEREOF**, the undersigned have entered into this Engine Lease Agreement on and as of the date first set forth above.

LESSEE:

**MK AIRLINES LIMITED**

By: _____
Name: _____
Title: _____

LESSORS:

**V1C-23244 LLC**
By: Vx Capital Partners LLC

By: _____
Name: _____William Hudson_____
Title: _____Manager_____

**HBC-GSKY LLC**

By: _____
Name: _____
Title: _____

**HWC-GSKY LLC**

By: _____
Name: _____William Hudson_____
Title: _____Manager_____

IN WITNESS WHEREOF, the undersigned have entered into this Engine Lease Agreement on and as of the date first set forth above.

LESSEE:

**MK AIRLINES LIMITED**

By: _____
Name: _____
Title: _____

LESSORS:

**V1C-23244 LLC**
**By:  Vx Capital Partners LLC**

By: _____
Name: _____
Title: _____

**HBC-GSKY LLC**

By: _____*Robert Brown*_____
Name: _____*Robert Brown*_____
Title: _____*Manager*_____

**HWC-GSKY LLC**

By: _____
Name: _____
Title: _____

**Appendix 1**

**Telefax or email to William B. Hudson**
**Lease Engine Redelivery Sheet**
**Engine Lease Department Fax: +1.415.296.5260**

**Redelivery of Engine Serial No. 715220**
**Type: JT9D-7R4G2**
**Lease Start: TT:          TC:                    TSLSV:              CSLSV:**
**Term:** _____
*Please facsimile following information prior to Engine redelivery:*
**Date of Installation:** _____
**Date of Removal:** _____
**Aircraft Registration number & Engine Position:** _____
**Operated Flight Hours:** _____
**Flight Cycles:** _____

| | | |
|---|---|---|
| Operation discrepancies during Term: <br> If yes, which complaints (or attached documents): | yes | no |
| Power assurance test performed before Engine removal: <br> If yes, any complaints (or attached documents): | yes | no |
| Engine Condition Monitoring (ECM) data attached: | yes | no |
| ECM data including take off readings attached: | yes | no |
| Video-Borescope inspection performed during Term: | yes | no |
| If yes which findings (or attached documents): | yes | no |
| Engine preserved per MM (30-365 days): | yes | no |
| Missing Parts / Shipped Loose List attached: | yes | no |
| Engine serviceable Tag attached to Engine: | yes | no |
| Local Airworthiness Authority Tag | yes | no |
| EASA Form 1 | yes | no |
| FAA Form 8130-3 | yes | no |

| List AD's and SB's compiled with during the Term If yes which (or attached documents): | yes | no |
|---|---|---|
|  |  |  |

**Note:** In the event that the Engine thrust rating is changed during the operation, such change should be treated as a removal and re-installation for the purpose of this report.

**Operator:**     **Name:**              **Title:**              **Signature:**          **Date:**
**(Please Print)**

**Appendix 2**

**Monthly Report Form**
**Telefax to (415) 296-5260 or email to andrea@vxcapital.com**

This report must be completed by the Customer / Operator for each calendar month of operation
of the Engine before the 5th business day of the subsequent month.

| | |
|---|---|
| Customer / Operator: | MK Airlines Limited |
| Engine Serial No.: | 715220 |
| Engine Type: | JT9D-7R4G2 |
| Month of Operation: | |
| **Engine Installation And Utilization Data:** | |
| Installation Date: | |
| Aircraft Registration: | |
| Aircraft Owner: | |
| Aircraft Position: | |
| Engine flight hours for month: | |
| Engine cycles for month: | |
| Current TSN & CSN of the Engine: | / |
| **Engine Removal:** | |
| Planned removal date: | |

Engine Components Removed During Month:     Y/N
If Yes, identify:

Engine Placard Installed:     Y/N


Comments:

_____
_____
_____

**Note,** if engine thrust rating were changed during month of operation, such change should be treated as a removal and re-installation for the purpose of this report.

Signed: _____

Name : _____( please print)

Title: _____

Date: _____

**Appendix 3**

(Please use MK Airlines Limited's Company Letterhead)


**Non-Incident Statement**

JT9D-7R4G2 ESN 715220 has not been involved in, nor removed from an aircraft that was involved in an incident or accident, major failure, or fire nor has the Engine nor the parts installed on it been subjected to extreme stress or heat nor obtained from any Government, Military, or Unapproved Source.


Lease Commencement Engine Total Time/ Total Cycles:
Lease Termination Engine Total Time/Total Cycles:


Signed by: _____


Name: _____


Title: _____


Date: _____

**Appendix 4**

**(Please use MK Airlines Limited's Company Letterhead)**


**Statement**
**MK Airlines Limited** certifies that the leased Engine JT9D-7R4G2 ESN 715220 was operated in accordance with the engine manufacturer's rules and recommendations during the Term.


Lease Commencement Engine Total Time/ Total Cycles:
Lease Termination Engine Total Time/Total Cycles:


Signed by: _____


Name: _____


Title: _____


Date: _____

**Appendix 5**

**AIRCRAFT OWNER/MORTGAGEE ACKNOWLEDGMENT**

*A SEPARATE ONE TO BE SIGNED BY EACH OWNER, LESSOR, MORTGAGEE AND
SECURED PARTY OF THE AIRFRAME ON WHICH THE ENGINE IS INSTALLED*

Date:

Re:  MK Airlines Limited

Reference is made to the Engine Lease Agreement dated as of _____ __, 2007 (as at
any time amended or supplemented, the "Lease") by and between V1C-23244 LLC, a Delaware
limited liability company, HBC-GSKY LLC, a California limited liability company and HWC-
GSKY LLC, a California limited liability company (collectively, the "Lessors") and MK
Aviation Limited, an English company ("Lessee") pursuant to which the Lessors have agreed to
rent and lease to the Lessee one  Pratt & Whitney model JT9D-7R4G2 engine bearing
manufacturer's serial number 715220 with QEC (the "Engine") on the terms and conditions set
forth in the Lease

The undersigned is the _____ [list those applicable to you:
owner/lessor/mortgagee/secured party] of the airframe (the "Airframe") on which the Engine is
installed.  The undersigned understands that under the laws of the country where the airframe is
registered ("Registration Country"), the laws of the country where the Lessee is certificated
("Certification Country"), and laws of other countries, (i) the mortgagee or owner of an airframe
may be deemed to have certain rights to deal with any engine installed on such airframe in order
to enforce its rights as mortgagee or owner of such airframe, (ii) liens and encumbrances on an
airframe may attach and extend to engines installed on such airframe, and/or (iii) engines
installed on an airframe may not be subject to any liens and encumbrances other than those to
which such airframe is subject.  The undersigned understands that the Engine is owned by the
Lessors and is subject to a first priority security interest in favor of Petrus Aviation Lending,
L.L.C.

The undersigned hereby agrees and acknowledges that, notwithstanding any
provision to the contrary of the laws of the Registration Country, the Certification Country or
any other law or any agreement including, without limitation, any conditional sales, security or
lease agreement with the Lessee, the installation of the Engine on the Airframe shall not affect
title to or liens on the Engine.  The undersigned agrees that the Lessors are and shall continue to
be the owner of the Engine and the Engine is and shall continue to be subject to the liens of
Petrus Aviation Lending, L.L.C. The undersigned covenants and agrees that it shall not assert,
and hereby waives, any claim against the Lessors or Petrus Aviation Lending, L.L.C. in respect

of any right, title or interest in the Engine which is inconsistent with the agreements in this instrument. The undersigned covenants and agrees that it shall not seek to enforce any rights against the Engine under any agreement solely as a result of the Engine being installed on the Airframe. The undersigned hereby disclaims and waives any ownership interest in the Engine and any security interest in the Engine.

This Acknowledgment is entered into by the undersigned for the benefit of the Lessors and Petrus Aviation Lending, L.L.C., who shall be third party beneficiary.

This Acknowledgment shall in all respects be governed by, and construed in accordance with, the laws of the State of New York, USA, including all matters of construction, validity and performance.

This Acknowledgment is duly signed and dated as of _____ ___, 200_.

_____,
a _____ corporation

By: _____ _____

Name: _____ _____

Title: _____ ____

AS THE _____
[OWNER, LESSOR, MORTGAGEE, OR SECURED PARTY]

**Appendix 6**

**CONSENT AND ACKNOWLEDGMENT**

[Date]

MK Airlines Limited

     Re:    One Pratt & Whitney Model JT9D-7R4G2 Engine Bearing Manufacturer's Serial Number 715220 (the "Engine")

Ladies and Gentlemen:

     Reference is made to the Loan and Security Agreement dated as of August , 2007 (the "Security Agreement") among V1C-23244, LLC, a limited liability company organized under the laws of the State of Delaware ("VIC"); HBC-GSKY LLC, a limited liability company organized and existing under the laws of the State of California ("HBC"), and HWC-GSKY LLC, a limited liability company organized and existing under the laws of the State of California ("HWC" and together with V1C and HBC being hereinafter collectively referred to as the "Lessors"), and Petrus Aviation Lending, L.L.C. (the "Secured Party"). Each of V1C, HBC and HWC hereby notifies MK Airlines Limited [a company incorporated and existing under the laws of England (the "Lessee") that VIC, HBC and HWC have granted a security interest in and collaterally assigned and mortgaged their interest in (a) the Engine and (b) the Engine Lease Agreement dated as of [ , 2007] (the "Lease") between the Lessors and Lessee.

     Capitalized terms used herein and not otherwise defined are used with the meanings ascribed thereto in the Lease.

     The Lessors hereby direct Lessee to make all payments under the Lease, including all Monthly Rent, Utilization Fees and Minimum Utilization Fees and all other payments payable to the Lessors under the Lease from and after the date of this Notice, to the following account, unless Secured Party otherwise instructs you in writing:

     For payment of Monthly Rent and all other payments payable to Lessors under the Lease:

     JPMorgan Chase Bank, New York
     ABA 021 000 021
     A/C Petrus Aviation Lending, LLC
     A/C# 737309401

The Lessee agrees as follows:

1. The Lessee acknowledges and consents to the collateral assignment of the Lease and the grant of the security interest in the Engine in favor of the Secured Party pursuant to the terms of the Security Agreement.

2. The Secured Party and its directors, officers, members, managers, shareholders and employees shall be additional insureds under the insurance required to be maintained by the Lessee in compliance with Section 18 of the Lease; (ii) the Secured Party shall be designated as the sole loss payee with respect to any insurance proceeds payable to the Lessors in accordance with the terms of the Lease, and (iii) the Secured Party and its directors, officers, members, managers, shareholders and employees shall each be an Indemnitee under Section 17 of the Lease.

3. Until such time as the Secured Party has notified the Lessee in writing that the secured Party no longer has any interest in, to or under the Lease, the Lessee will not amend or modify, or consent to the amendment or modification of, the Lease without the prior written consent of the Secured Party, which such consent not to be unreasonably withheld or delayed.

4. Any consent or waiver required to be obtained from any of the Lessors for any action to be taken by the Lessee under the Lease shall at all times require the consent of such Lessor(s) and the Secured Party, which consent shall not be unreasonably withheld or delayed, provided, that, after the Secured Party has sent Lessee a notice that an Event of Default has occurred and is continuing under and as defined in the Security Agreement and/or an Event of Default has occurred and is continuing under the Lease (an "Enforcement Notice") and until the Secured Party sends the Lessee and Lessors a notice withdrawing the Enforcement Notice, any such consent or waiver shall require only the consent of the Secured Party.

5. Until such time as the Secured Party has notified the Lessee in writing that the Secured Party no longer has any interest in, to or under the Lease, Lessee agrees to pay all Monthly Rent and Utilization Fees directly to the Secured Party.

6. Lessee acknowledges and agrees that on and after the date it receives an Enforcement Notice and until such date as a notice of withdrawal of such Enforcement Notice is received by Lessee, Lessee shall permit the Secured Party to enjoy all the rights and powers of the Lessors under the Lease.

Notwithstanding anything to the contrary herein, the Secured Party agrees that so long as no Event of Default shall have occurred and be continuing under the Lease, neither it nor any person claiming by, through or under it (including without limitation, any person providing financing or refinancing for the Aircraft) shall interfere with Lessee's rights to quietly enjoy the Engine without hindrance or disturbance by it or by any person claiming by, through or under it and neither the Secured Party nor any other person claiming by, through or under it shall take or

cause to be taken any action which is contrary to or which otherwise interferes with or disturbs such right of the Lessee to quiet and peaceful enjoyment.

Pursuant to Section 20.C of the Lease, Lessors hereby direct Lessee to affix to the Engine a nameplate or stencil or other appropriate marking bearing the inscription:

"THIS ENGINE IS OWNED BY V1C-23244 LLC, HBC-GSKY LLC AND HWC-GSKY LLC AND IS SUBJECT TO A SECURITY INTEREST IN FAVOR OF PETRUS AVIATION LENDING, L.L.C."

This Notice and Confirmation may be executed in any number of counterparts, each of which shall constitute an original and all of which, taken together, shall constitute one agreement.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK.]

Thank you for your attention to this matter.

Very truly yours,

VIC-23244, LLC


By:_____
Name: _____
Title:_____


HBC-GSKY LLC


By:_____
Name: _____
Title:_____


HWC-GSKY LLC


By:_____
Name: _____
Title:_____


Accepted and agreed to:

MK AIRLINES LIMITED


By: _____
Name: _____
Title: _____


PETRUS AVIATION LENDING, L.L.C.


By:_____
Name: _____
Title: _____

**Appendix 7**

**LEASE TERMINATION**

LEASE TERMINATION

THIS LEASE TERMINATION (this "Agreement") is made and entered into as of
,         (the "Agreement") among V1C-23244 LLC, a limited liability company organized
and existing under the laws of the State of Delaware ("V1C"), HWC-SKY LLC, a limited
liability company organized and existing under the laws of the State of California ("HWC") ,
HBC-SKY LLC, a limited liability company organized and existing under the laws of the State
of California ("HBC" and together with HWC and HBC being hereinafter collectively referred to
as the "Lessors") and MK AIRLINES LIMITED, a company incorporated and existing under the
laws of England (the "Lessee").

W I T N E S S E T H:

WHEREAS, the Lessors and the Lessee are parties to that certain Engine Lease
Agreement, as more particularly described in Annex I attached hereto (the "Lease"), with respect
to that certain Pratt & Whitney Model JT9D-7R4G2 aircraft engine bearing manufacturer's serial
numbers 715220 (the "Engine");

WHEREAS, the Lessor and the Lessee desire to terminate the Lease.

NOW, THEREFORE, in consideration of the premises and for other good and valuable
consideration, the receipt and sufficiency of which is hereby acknowledged, the Lessors and the
Lessee agree as follows:

1.      The Lease is hereby terminated and the Engine is released from all of the terms
and conditions thereof; provided that the provisions of the Lease that, by their respective terms,,
are to survive the termination or expiration of the Lease shall survive the termination of the
Lease to the extent required thereby for their full observance and performance.

2.      This Agreement may be executed in counterparts, each of which when executed
and delivered shall be deemed an original and all together shall constitute one and the same
instrument.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first above written.

VIC 23244 LLC

By:_____
Name:
Title:


HBC-GSKY LLC

By:_____
Name:
Title:

HWC-GSKY LLC

By:_____
Name:
Title:


MK AIRLINES LIMITED

By:_____
Name:
Title:

Annex I
to Lease Termination

Description of Lease

Engine Lease Agreement dated as of [                    ] among V1C-23244 LLC, HBC-
GSKY LLC and HWC-GSKY LLC ("Lessors") and MK AIRLINES LIMITED which
was recorded by the Federal Aviation Administration on _____ and
assigned Conveyance No. _____